LaSHAWN A., by Her Next Friend, Evelyn MOORE, et al., Appellees,

v.

Sharon Pratt KELLY, et al., Appellants.

No. 91–7159.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1992.

Decided April 16, 1993.

Beverly J. Burke, Deputy Corp. Counsel, Washington, DC, for appellants. John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Donna M. Murasky, Assistant Corp. Counsel, Washington, DC, were on the brief, for appellants.

Marcia Robinson Lowry, New York City, with whom Christopher T. Dunn, Elizabeth Symonds, and Arthur B. Spitzer, Washington, DC, were on the brief, for appellees.

Before MIKVA, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

MIKVA, Chief Judge:

This is a review of a decision by the district court in favor of a group of unfortunate children who brought a class action suit for injunctive relief against various officials of the District of Columbia. The plaintiffs brought the class action on behalf of children who are in foster care under the supervision of the District of Columbia Department of Human Services ("DHS"), as well as children who are reported to be abused or neglected but are not yet in the care of the DHS.

The children attacked a child-welfare system which they alleged is characterized by ineptness and indifference, inordinate caseloads and insufficient funds. The district court found that, because of the appalling manner in which the system is managed, children remain subject to continuing abuse and neglect at the hands of heartless parents and guardians, even after the DHS has received reports of their predicaments. The court also found that youngsters who have been taken into the custody of the District's foster-care system languish in inappropriate placements, with scarce hope

of returning to their families or being adopted. The court held that the District of Columbia's treatment of the children violated the Constitution and federal and local statutes.

After trial, the parties negotiated a remedial order that seeks to ease the plight of children who depend on the DHS for protection and for the opportunity to live and grow in a stable and nurturing environment. In the remedial order, the District of Columbia expressly reserved the right to appeal the district court's judgment assessing liability against it. The District's appeal from this judgment raises some complex constitutional and federal statutory issues. Because District of Columbia law is an independent and sufficient basis to support the district court's decision, however, we need not reach these issues in order to uphold the district court's resolution of this case.

## I. BACKGROUND

It is not necessary to recount at length the complex background of this case, nor to recapitulate the extensive list of allegations against the District officials that the district court found to be based in fact. For the details as to these matters, we refer to Judge Thomas F. Hogan's clear and comprehensive discussion in the opinion below. *LaShawn A. v. Dixon,* 762 F.Supp. 959, 961–87 (D.D.C.1991). Suffice it to say that the district court found that the District of Columbia Department of Human Services ("DHS"), the agency entrusted with the care of foster children and abused and neglected children, has consistently evaded numerous responsibilities placed on it by local and federal statutes. Among the agency's transgressions are:

[T]he failure of the DHS to initiate timely investigations into reports of abuse or neglect, the failure to provide services to families to prevent the placement of children in foster care, the failure to place those who may not safely remain at home in appropriate foster homes and institutions, the failure to develop case plans for children in foster care, and the failure to move children into a situation

of permanency, whether by returning them to their homes or freeing them for adoption.

*LaShawn A.,* 762 F.Supp. at 960.

The district court held, as to the children already enmeshed in the foster-care system, that the practices of the DHS deprived them of their due process rights under the Fifth Amendment to the United States Constitution. The court also found that the challenged actions and non-actions of the DHS violated two federal statutes: the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–627 and §§ 670–79, and the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–5106. The court held the defendants liable under 42 U.S.C. § 1983 for both the constitutional and federal statutory violations.

The children also raised pendent claims that the defendants had violated the District of Columbia's statutory and regulatory law, namely the Prevention of Child Abuse and Neglect Act of 1977, D.C.Code Ann. §§ 2–1351 to –1357, §§ 6–2101 to –2107, §§ 6–2121 to –2127, and §§ 16–2351 to –2365 ("Abuse and Neglect Act"); the Youth Residential Facilities Licensure Act of 1986, D.C.Code Ann. §§ 3–801 to –808 ("Licensure Act"); and the Child and Family Services Division ("CFSD") Manual of Operations (September 1985). The district court found that the defendants had violated these acts and regulations, but it did not hold that the children possessed an explicit or implied private cause of action under District law to enforce these statutes. Instead, it held that the District's laws conferred constitutionally protected liberty and property interests on the children, the deprivation of which, without due process, was actionable under § 1983.

On appeal, the District officials assert that the district court erred in finding that the administration of the city's child-welfare and foster-care system violated the due process clause of the Fifth Amendment. They further contend that *Suter v. Artist M.,* — U.S. —, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), which the Supreme Court decided after the district court decided the present case, forecloses any federal statu-

tory cause of action. As we will explain, it is not necessary for us to confront these constitutional and federal statutory issues, for the district court judgment is completely supportable on the grounds of local law.

## II. ANALYSIS

### A. Abstention

■ As an initial matter, we must address the District officials' contention that under principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the district court should have abstained from deciding a large portion of this case. Appellants assert that *Younger* applies as to children within the foster-care system because these children are parties to ongoing proceedings in the Family Division of the Superior Court of the District of Columbia where their claims could have been resolved. (Appellees do not urge *Younger* abstention as to the claims of children who are reported to be abused or neglected but who are not yet in foster care, because these children are not yet parties to Family Division proceedings.) This Court has never decided whether the District of Columbia is a state for *Younger* abstention purposes. Instead, every time the question has arisen, we have assumed that the doctrine applies to the District and nonetheless determined, in light of the facts of each particular case, that *Younger* abstention has not been appropriate. *See, e.g., District Properties Assocs. v. Dist. of Columbia*, 743 F.2d 21, 28 n. 4 (D.C.Cir.1984); *Family Div. Trial Lawyers v. Moultrie*, 725 F.2d 695, 701 n. 7 (D.C.Cir.1984). In the present case, we again find it unnecessary to reach the issue, because *Younger* abstention would not be required here even if the doctrine applied to the District with full force.

In *Younger* and its progeny, the Supreme Court has established that federal courts may not interfere with pending state judicial or administrative proceedings. Although the Supreme Court has extended *Younger* abstention well beyond its original application to pending state criminal proceedings, the Court has never abandoned the core principle that the doctrine is applicable only "if the [federal] plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings.'" *Moore v. Sims*, 442 U.S. 415, 425, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979) (quoting *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977) (emphasis in original)). The notions of comity underlying *Younger* abstention do not compel federal courts to refrain from hearing federal statutory and constitutional claims when the pending state proceeding is an inadequate or inappropriate forum for pursuing these claims.

This Court has previously applied this principle in a case concerning the Family Division of the D.C. Superior Court. *Family Div. Trial Lawyers of Superior Court–D.C., Inc. v. Moultrie*, 725 F.2d 695 (D.C.Cir.1984), involved the constitutional claims of three attorneys who regularly requested assignment of cases in the Family Division. In federal district court, the attorneys unsuccessfully challenged the practice by which the D.C. Superior Court appointed counsel to represent indigent parents in neglect proceedings without reimbursement. They appealed the adverse decision to this Court. Before this Court, the appellees argued that the district court should have abstained from deciding the merits of the appellants' claims, because these claims could have been raised and adequately dealt with in the individual neglect cases in which the appellants were counsel.

This Court rejected the appellees' abstention argument. It questioned "the need or wisdom of extending *Younger* to all constitutional claims that *might* be adjudicated in state as well as federal courts." 725 F.2d 695, 702 (D.C.Cir.1984). Instead, the court focused on whether the federal plaintiffs were "parties to any pending suit in the local courts in which their constitutional challenges could *naturally* be resolved." *Id.* at 702 (emphasis added). The panel observed that "the individual neglect cases in which the appellants are counsel are questionable vehicles at best for raising their constitutional claims." *Id.* at 703.

Consequently, it concluded that *Younger* abstention was not applicable.

Proceedings in the Family Division are an equally questionable vehicle for adjudicating the claims raised in the present case. There are three types of Family Division proceedings that may be "pending" for a child entangled in the District of Columbia's foster-care system: (1) a "neglect proceeding" adjudicating a neglect petition filed by the Corporation Counsel against the child's parents, (2) periodic review hearings, and (3) proceedings adjudicating motions to terminate parental rights. None of these proceedings is an appropriate forum for this multi-faceted class-action challenge to the District of Columbia's administration of its entire foster-care system.

Neglect proceedings are designed to focus on the special problems surrounding the neglect or abuse of a child by his or her parent, guardian, or custodian. The Family Division of the D.C. Superior Court has recognized that these proceedings are not suitable arenas in which to grapple with broad issues external to the parent-child relationship:

> By their very nature neglect proceedings contemplate issues centering on the care of a child by his or her parent. If need be "related matters involving the same family or household" can be consolidated. [D.C. Superior Court Rules Governing Neglect Proceedings Rule 2 and 3(b).] Anything broader is inconsistent with the nature of the proceedings.

*In the Matters of N.P. and L.W.*, Nos. 404–79, 418–79 (D.C.Super.Ct. June 14, 1982), slip. op. at 2–3, *quoted in Family Div.*, 725 F.2d at 703.

The other two types of proceedings that are pending for some of the children—review hearings and termination proceedings—are even less suitable arenas in which to present the claims the children advance in this case. The Family Division is required to provide each child in the foster-care system with a review hearing either every six months or every year, depending on the child's age and the amount of time he or she has been within the system. D.C.Code Ann. §.16–2323(a). The

review hearing is no broader in scope than the neglect proceeding. It is clearly intended merely to reassess periodically the disposition of the child.

The Family Division has explicitly rejected the use of review hearings to adjudge claims requesting broad-based injunctive relief based on federal law. In *In re Brim*, No. 489–80 (D.C.Super.Ct. July 20, 1984), the Family Division denied a motion by two children for injunctive relief against the D.C. Department of Human Services for the Department's alleged mishandling of Social Security disability payments it collected on the children's behalf. The court noted:

> This motion—with the full panoply of remedies requested (such as an accounting, declaratory relief requiring promulgation of rules and regulations, establishment of trust funds, and a permanent injunction)—is simply not appropriately heard within the context of a review, pursuant to 16 D.C.Code 2323, to monitor the post-dispositional welfare of a neglected child.... [T]hese issues are properly raised in federal district court.

*Id.*, slip op. at 2.

The only other proceeding available to children in the foster-care system is the termination hearing. *See* D.C.Code Ann. §§ 16–2358 to 59. This proceeding, however, has an even more limited function than the neglect proceeding and review hearing. A termination hearing is held in response to a motion by a child (through .counsel), or by the District of Columbia, to terminate the parental rights of the child's parents, guardians, or custodians. D.C.Code Ann. § 16–2354. The hearing is manifestly not intended to address subjects other than the cessation of parental rights, and the children's claims in this case are well outside its scope.

In sum, there was no pending judicial proceeding in the District of Columbia which could have served as an adequate forum for the class of children in this case to present its multifaceted request for broad-based injunctive relief based on the Constitution and on federal and local statutory law. This holding squares with our

decision in *District Properties Assocs. v. Dist. of Columbia*, 743 F.2d 21 (D.C.Cir. 1984). In *District Properties*, local landlords brought a class action suit broadly challenging, on constitutional and federal statutory grounds, the practices and procedures of the District of Columbia agency responsible for administering the District's rent control laws. They pursued their case in U.S. District Court, despite ongoing administrative and judicial proceedings in the District of Columbia. This Court reversed the district court's use of *Younger* abstention to bar the action. In language strikingly relevant to the present case, we stated:

> [T]he only possible ground for *Younger* dismissal in this case would be if [the ongoing District of Columbia proceeding] was the kind of local enforcement proceeding in which appellants could have had a full and fair opportunity to present their federal claims. But ... appellants' claims are in a number of respects considerably broader than the claims they were able to assert in the proceedings in local courts or before the [Rental Accommodations Office]. And the relief they seek in this case is far broader than that which the local court could have granted in the administrative review proceeding.... There being no pending state enforcement proceedings that would have afforded appellants a full and fair opportunity to litigate their constitutional claims, the predicate for *Younger* abstention was simply absent in this case.

*Id.* at 28. For the same reasons, we refuse to hold that the district court should have abstained from deciding the present case. We proceed to the merits.

### B. Challenges to the Child–Welfare and Foster–Care System

The district court adjudged the defendants liable "under 42 U.S.C. § 1983 for violating the federal and local statutory rights of all of the children in the plaintiff class and for violating the constitutional rights of those plaintiffs in the District of Columbia's foster care custody." *LaShawn A. v. Dixon*, 762 F.Supp. 959, 998 (D.D.C.1991). Appellants attack the judg-

ment so far as it rests on federal statutory rights. They argue that the Supreme Court's opinion in *Suter v. Artist M.*, —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), decided after the district court issued its ruling in *LaShawn*, renders the federal statutes at issue unenforceable under 42 U.S.C. § 1983. Appellants also challenge the constitutional basis of the district court opinion.

It is not necessary to reach the complex constitutional and federal statutory issues in this case. The District of Columbia's statutes and regulations provide a scheme for the protection and care of foster children, and children reported to be abused or neglected, that is equally as comprehensive as that provided by the federal statutes and is appropriately before us under our pendent jurisdiction.

As outlined by the district court, the obligations of the District of Columbia Department of Human Services under the Abuse and Neglect Act, the Licensure Act, and the CFSD Manual of Operations parallel almost precisely the requirements contained in the relevant federal laws. Every claim supported by federal law is also supported by District law. *LaShawn A. v. Dixon*, 762 F.Supp. at 961–64. The DHS has violated District law as well as federal law by failing, for example, to initiate timely investigations into reports of abuse or neglect, to provide services to families in order to prevent the placement of children in foster care, to place those who may not safely remain at home in appropriate foster homes and institutions, to develop case plans for children in foster care, and to move children into a situation of permanency.

As the district court framed its decision, local law did not provide an entirely independent ground for the judgment, because the court did not find that the local statutes themselves provided the children with an explicit or implied private right of action. Instead, the district court apparently decided that the District of Columbia's statutes and policies create constitutionally protected liberty and property interests for those children in the District's foster-care custo-

dy. "To the extent these statutes and regulations confer benefits upon the plaintiffs in the District's foster care, the deprivation of those benefits takes on constitutional dimensions." *LaShawn*, 762 F.Supp. at 993. The children thus had a cause of action under § 1983.

If, however, we determine that the district court's judgment can be supported entirely by reference to the law of the District of Columbia, as appellees argue, we need not enter the § 1983 thicket at all. The fact that the district court itself did not rest its decision on this basis is of no concern, for "[t]he prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970).

■ We find that the District statutes create a private cause of action for children in foster care and for children reported to have been abused or neglected but not yet in the District's custody. As for the latter group, this matter was conclusively settled by the District of Columbia Court of Appeals in *Turner v. District of Columbia*, 532 A.2d 662 (D.C.App.1987). In that case, a mother brought suit against the District of Columbia on behalf of her children for the city's failure to remove the children from their abusive father's home. The District of Columbia Court of Appeals found that the Abuse and Neglect Act provides a private remedy against the District for the special class of abused and neglected children protected by the statute:

> With respect to the District of Columbia ... we hold that when [the Child Protective Services Division] received a report that the two Roddy children, who were specifically and individually identified, were being abused by their father, [the Abuse and Neglect Act] created a special relationship between the District and the two children. From that moment on, the District had a duty to take certain steps prescribed by the Act for the protection of those children. The District's breach

of that duty is actionable under the special duty exception to the general rule [that the government's general duty to the citizenry at large is not enforceable by a particular individual].

*Id.* at 675.

*Turner* establishes that the children in the present case who are reported to be abused or neglected but who are not yet in the District's custody have a private right of action under the District's Abuse and Neglect Act. It therefore seems self-evident that this Act (which regulates the District's foster-care system as well as its child-abuse-response system) also creates privately enforceable rights for those children actually in the District's custody. It is generally recognized that the state owes a greater duty toward people in its custody than toward people still in the care of private actors. Indeed, in assessing duties imposed on the state by the United States Constitution (as opposed to duties imposed by state statutes), the Supreme Court has held that the state has a constitutional duty to assume responsibility for the safety and well-being of a person *only* when the state takes that person into its custody. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199–201, 109 S.Ct. 998, 1005–1006, 103 L.Ed.2d 249 (1989).

It would strain logic to conclude that the District, through the Abuse and Neglect Act, has assumed a duty on behalf of children still in the private sphere, but not on behalf of those youngsters who are in its custody. We therefore hold that the Abuse and Neglect Act creates a private right of action for children in the foster-care system.

■ There is an additional basis in District law for the right of the children in foster care to sue to enforce the statutes at issue. The other District of Columbia statute relied on by appellees, the Youth Residential Facilities Licensure Act, explicitly provides these children with a private cause of action. This act regulates Youth Residential Facilities, which it defines to "include, but not necessarily be limited to, foster homes, youth shelters, runaway shelters, emergency care facilities, youth group homes, supervised apartments, and

residential treatment centers." D.C.Code Ann. § 3–801(9)(B).

Unquestionably, every child entangled in the D.C. foster-care system is situated in a facility covered by this provision. The act goes on to grant every resident of one of these facilities a private right of action:

> Notwithstanding the availability of any other remedy, a resident, any person acting on or in behalf of a resident, or the licensee or administrator of a facility may bring an action in court for mandamus to order the Mayor, a District government agency, or the youth residential monitoring committee to comply with this chapter, a rule issued pursuant to this chapter, *or any other District law relevant to the operation of the facility or the care of its residents.*

D.C.Code Ann. § 3–808(d)(1) (emphasis added).

In other words, the Licensure Act permits children in foster care to sue to enforce not only the requirements of the Licensure Act itself, but also all of the provisions of the Abuse and Neglect Act related to "the care" of these children. This broad language encompasses all the provisions that the appellants are alleged to have violated.

In sum, under District of Columbia law, every member of the appellee class had a private right of action to enforce the obligations imposed on the DHS by local statutes and regulations. Moreover, these statutes provide an independent basis for supporting the district court's judgment. We therefore affirm the district court without addressing the federal statutory and constitutional claims. Our authority to decide the case entirely on pendent state grounds is incontrovertible. The Supreme Court has held that "where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question ... the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal ground." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 722, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966) (quoting *Hurn v. Oursler*, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933)).

No challenge has been raised to the district court's certification of the class. In any event, such certification was proper in relation to the pendent claims, as well as the federal claims. The children could not have brought their District law claims as a class action in the Family Division. *See* Rules Governing Neglect Proceedings Rule 1(b) (excluding from list of rules applicable to neglect proceedings the rule providing for class actions). They clearly could, however, have brought these claims as a class action in the District of Columbia Superior Court. *See* D.C.Super.Ct.R.Civ.P. 23. It thus is not necessary for us to consider the issue of whether the federal district court could have entertained the pendent claims as a class action if the procedure had in fact been unavailable to the children in the District of Columbia courts.

## III. CONCLUSION

Because the district court's judgment is independently supportable by District of Columbia law, we affirm the court's decision in favor of the children in this case. It appears that each provision of the remedial order reflects the requirements of District of Columbia statutes and regulations, as well as of federal statutes. Nevertheless, because the order was drafted to conform with federal as well as with District law, there are scattered references in the order to federal law that are inappropriate in light of our confirmation of the decision entirely on the basis of local law.

We therefore remand to the district court, with instructions to fashion an equally comprehensive order based entirely on District of Columbia law, if possible. If there are any portions of the consent decree that depend entirely on a federal statute, the district court should consider the impact of *Suter v. Artist M.*, —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), on those provisions before it includes them in the revised consent decree.

It is so ordered.