Cheryl FEELING, et al., Plaintiffs,

v.

Sharon Pratt KELLY, et al., Defendants.

Civ. A. No. 82–2994.

United States District Court,
District of Columbia.

Feb. 25, 1994.

Lynn E. Cunningham, Neighborhood Legal Services, Robert Berlow, Washington, DC, for plaintiffs.

George C. Valentine, Office of the Corp. Counsel, Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Presently before the Court are two motions related to this 12 year old case, (1) defendants' motion to vacate our 1986 consent judgment and 1988 order, and (2) defen-

dants' motion to vacate our March 2, 1993 contempt order. For the reasons stated herein, the Court denies defendants' motion to vacate the consent judgment and 1988 order and grants defendants' motion to vacate the contempt order.

### Background

This class action was filed in 1982 challenging the District of Columbia's ("the District") administration of the Emergency Assistance Services ("EAS") program, created under the federal statutory authority of Aid to Families with Dependent Children ("AFDC"). 42 U.S.C. § 601 *et seq.* AFDC is an optional program through which states with federally approved assistance programs receive funding for grants to the needy. The District's EAS plan has received such federal approval.

Central to this case is the speed with which the EAS must process applications for assistance. The federal regulations under which the EAS operates do not set a specific number of days in which claims for assistance must be processed. The regulations, however, do require that the State's plan provide benefits "forthwith." *See* 45 C.F.R. § 233.110(a)(5). The States have been left the task of defining "forthwith".[1]

In 1982, plaintiffs alleged that the District denied benefits arbitrarily and failed to provide assistance in a timely fashion. The parties agreed to settle the litigation pursuant to a consent judgment entered into on March 12, 1986. Under the consent judgment, the parties agreed that the District of Columbia would define "forthwith" as requiring "assistance in not greater than eight working days from the date of a completed application." Consent Judgment, ¶ 2; *see also* D.C.Code § 3–1004(a).

Inadequate compliance by defendants led this Court to enter another order on January 28, 1988 (the "1988 order"). The 1988 order largely adopted the suggestions of the District's own Department of Human Services and directed defendants to hold regular task force meetings to consider the problems of the EAS. In addition, defendants were to supply monthly reports to plaintiffs' counsel.

On June 6, 1991, plaintiffs moved for a contempt order arguing that defendants were not complying with the terms of both the consent judgment and the 1988 order. The Court denied this motion. On May 22, 1992, plaintiffs renewed their motion for contempt. Defendants contested this and unsuccessfully sought two protective orders to limit plaintiffs' discovery.

We held the District in contempt on March 2, 1993. In response, the District passed emergency legislation altering the number of days in which the District must process emergency assistance applications (hereafter the "processing rule" or "processing period") from 8 to 12 days.[2] As a result of this legislation, defendants filed a motion to vacate the contempt order, arguing that they are now in compliance, not with the original 8 day processing rule, but with the 12 day rule. Defendants have also filed a motion to vacate the consent judgment and the 1988 order, arguing that changes in caselaw have removed a federal right of action to challenge the EAS.

### Analysis

I. *Motion to Vacate the 1986 Consent Judgment and 1988 Order*

■ Defendants seek relief under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 60(b),[3] arguing that the Supreme Court's ruling in *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), removed the federal statutory cause of action under-

---

1. Their definitions vary widely. For example, New York, New Jersey, Massachusetts and Ohio all have 30 calendar days in which to process applications, while Maryland does not define "forthwith", and Virginia requires "immediate" benefits. *See* Affidavit of Kate Jesberg, Defendants' Ex. 6.

2. The original emergency legislation was valid for 90 days. *See* D.C. Act 10–36 (signed June 8, 1993). The emergency legislation has been ex-

tended by temporary legislation for 225 days. According to defendants, a permanent change to 12 days is under consideration.

3. Defendants specifically seek relief under Fed. R.Civ.P. 60(b)(5) (reversal of prior judgment upon which judgment in this case is based), and Rule 60(b)(6) (permitting relief from judgment for "any other reason").

pinning the consent judgment and the 1988 order, and that equity therefore requires that we vacate both orders. Rule 60(b) applies to consent decrees as it does to other judgments. *Rufo v. Inmates of Suffolk County Jail,* —— U.S. ——, ——, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992).

In *Suter,* the Court held that language in the Adoption Act[4] did not create a private right of action under 42 U.S.C. § 1983 because the only requirement placed on the States was that they submit a plan for approval by the Secretary of Health and Human Services. The Court concluded that the statutory requirement that the State make "reasonable efforts" to act in each child's best interests was too ambiguous to create a private right of action. —— U.S. at ——, 112 S.Ct. at 1369. Defendants contend that AFDC is similar to the Adoption Plan and that the requirement that benefits be paid "forthwith" is equally hortatory rather than mandatory. *See Id.* —— U.S. at ——, 112 S.Ct. at 1366 (*citing Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, ——, 67 L.Ed.2d 694 (1981)).

Because defendants conclude that § 1983 was the sole theory under which the consent decree was agreed to, they argue that after *Suter* the consent decree must be vacated. In so petitioning, defendants expect the Court to ignore other possible bases for federal jurisdiction as well as our supplemental jurisdiction over issues of local law.

■ Initially the Court must determine whether the decision in the case at bar was actually based on precedent later reversed or altered by *Suter.* When there has been a decision on the merits this task is reasonably simple. If the law upon which a judge rules is altered, a consent decree based upon that ruling must be vacated. *See Evans v. City of Chicago,* 10 F.3d 474 (7th Cir.1993). In *Evans,* the parties agreed to a consent decree only after the trial court had ruled for plaintiff and this judgment had been upheld on appeal. Subsequently, another panel of the

Court of Appeals reversed the earlier decision. The trial judge then vacated the consent decree, concluding that the decree's foundation had collapsed. The Court of Appeals affirmed, determining that the consent decree was based on a court judgment rather than an independent compromise of a claim. *Id.* at 476–77. *See also People Who Care v. Rockford Bd. of Educ.,* 961 F.2d 1335, 1338 (7th Cir.1992) (" 'consent' that is no more than knuckling under to the inevitable is more like an adjudication than a contract").

■ The case at bar is markedly different from *Evans.* The parties mutually agreed to a compromise before trial in the hope of avoiding protracted and expensive litigation. *See* consent judgment, p. 2. It is unclear these many years later what prompted settlement. Plaintiffs included several charges in their complaint, none of which were adjudicated or dismissed prior to the consent decree. This Court cannot conclude that settlement in this case was based solely on the belief that plaintiffs had a private right of action under § 1983. Therefore, we will not automatically vacate the consent judgment, but will instead determine whether the *Suter* holding so significantly changed the circumstances surrounding this case that it would be inequitable for the Court to retain jurisdiction. *See Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1240–41 (D.C.Cir.1980), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984).

Defendants contend that alleged similarities between AFDC and the statute at issue in *Suter* make that case dispositive. While several recent Circuit Court decisions concerning AFDC puts this contention in doubt,[5] the Court concludes that we need not decide the applicability of *Suter. See LaShawn A. v. Kelly,* 990 F.2d 1319, 1324 (D.C.Cir.1993). Assuming *arguendo* that *Suter* is applicable and plaintiffs lack a statutory private right of action, other possible federal grounds for recovery remain.

---

**4.** 42 U.S.C. §§ 620–28, 670–79(a).

**5.** *See Albiston v. Maine Com'r of Human Services,* 7 F.3d 258 (1st Cir.1993). The *Albiston* court concluded under that, even under the theories of

*Suter,* Congress intended to create enforceable rights under AFDC which included a private right of action under § 1983. *See also Howe v. Ellenbecker,* 8 F.3d 1258 (8th Cir.1993).

Plaintiffs argue that the consent judgment could be grounded upon an implied right of action. Defendants counter that *Suter* necessarily altered the implied right framework first adopted by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court in *Suter,* however, applied the *Cort* test and did not erect any new framework. —— U.S. at ——, 112 S.Ct. at 1370; see also *Health Care Plan, Inc. v. Aetna Life Ins. Co.,* 966 F.2d 738, 740 (2nd Cir.1992). Therefore, the Court is not convinced that *Suter* forecloses an implied right of action under AFDC.

■ In addition, plaintiffs plead several constitutional due process claims. *See* complaint, causes of action III, IV, V, X. With the exception of cause of action X, these due process allegations stem from violations of District law. Defendants maintain that because these due process claims result from statutory violations, § 1983 provides the sole remedy and due process claims for the same violations cannot also be made directly under the 14th Amendment. Other courts have held that where a claim comes within the protections of § 1983, no separate cause of action is available directly under the Constitution. *See e.g. Agresta v. Goode,* 797 F.Supp. 399, 408 (E.D.Pa.1992). Assuming this is true, and that the § 1983 right of action is lost, plaintiffs would still be free to proceed directly under the Constitution.

The Court concludes that these other federal claims provide support for the consent judgment and the 1988 order. Even if some elements of these claims did depend entirely on local law, the Court has the power to consider them under its supplemental jurisdiction.[6] *See Dist. of Columbia Common Cause v. Dist. of Columbia,* 858 F.2d 1, 10 (D.C.Cir.1988) (when federal claim is not frivolous, district court has broad discretion in exercising supplemental—then known as pendent—jurisdiction).

We must not forget that the issues of this case were never litigated and that we can not know what induced the parties to voluntarily reach settlement. We do not need such knowledge as paramount issues of judicial economy, convenience, as well as fairness to the litigants after 7 years demand that we deny defendants' motion to vacate the 1986 consent judgment and the 1988 order.

## II. *Motion to Vacate the Contempt Order*

■ This motion is separate and distinct from the motion previously considered. It is well settled that a trial court has broad discretion in administering consent decrees. *Stotts v. Memphis Fire Dept.,* 679 F.2d 541, 562 (6th Cir.1982), *rev'd* on other grounds *sub nom Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). Pursuant to that discretion, the Court held defendants in civil contempt for failure to comply with the terms of both the consent judgment and the 1988 order.[7] *See* Order of March 2, 1993. The District responded with emergency legislation changing the processing period from 8 to 12 days. Defendants now petition the Court to vacate the contempt order, arguing that the emergency legislation automatically altered paragraph 2 of the consent judgment by providing for the longer 12 day period.

The provisions of the consent judgment covering changes in statutory law, which are found in paragraph 11, state as follows:

ORDERED that if any federal or District of Columbia statute or regulation enacted subsequent to this Consent Judgment conflicts with the terms of the Judgment, the language of such statute or regulation shall control, in which event the parties may move to modify the judgment. (emphasis added). Defendants view the statement "shall control" (the "mandatory language") as providing for automatic modification of the consent judgment following statutory

---

**6.** The Court believes even plaintiffs underestimate the extent of supplemental jurisdiction. "[W]here two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question ... the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal ground." *La-*

*Shawn A.,* 990 F.2d at 1326 (*citing United Mine Workers of America v. Gibbs,* 383 U.S. 715, 722, 86 S.Ct. 1130, 1136–37, 16 L.Ed.2d 218 (1966)).

**7.** The Contempt order gave defendants 90 days to comply with the 8 day period. March 2, 1993 order, p. 2.

amendment. Plaintiffs, concerned about the change to produce a longer processing period, claim that defendants are bound by the 8 day processing period and cannot now alter by legislation what was agreed to in the consent judgment. As a fallback position, plaintiffs also contend that no change in the consent judgment is official until the Court approves a modification. Whatever the proper theory, defendants remain at least in technical violation of the 8 day processing rule for which they were held in contempt.

Courts employ a more flexible approach to modifying consent decrees when they concern institutional reform. *Rufo*, —— U.S. at ——, 112 S.Ct. at 759. This is because institutional reform decrees entangle courts in the administration of sovereign governments and as the history of numerous cases show, federal courts are poorly equipped to become entangled in such matters.

> [D]emocracy does not permit public officials to bind the polity forever. What one City Council enacts, another may repeal ... temporary officeholders may not contract away the basic powers of government to enact laws ... in the same way natural persons may make enduring promises about their own future behavior.

*Evans*, 10 F.3d at 477. Good faith on the part of the Executive is always expected, but it retains discretion within the range preserved by statutes and regulations. *Id.* at 479 (*citing White v. Roughton*, 689 F.2d 118 (7th Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983), as allowing town to enact new welfare legislation, although earlier consent decree seemed to commit it to different program in perpetuity).

■ This does not mean that the legislature has unlimited autonomy to statutorily reverse the effects of consent decrees. The Court must decide whether the modification is consistent with the underlying purpose of the decree.[8] *Rufo*, —— U.S. at ——, 112

S.Ct. at 762; *see also Hodge v. HUD*, 862 F.2d 859, 864 (11th Cir.1989). In the case at bar, the Court concludes that the underlying purpose of the decree was to insure the following: the timely provision of emergency assistance; an end to the arbitrary processing of applications for aid; and expedited hearings for those denied assistance. *See* consent judgment, p. 1. The exact duration of the processing period resulted from compromise.[9] Defendants have expressed plausible reasons why budgetary constraints impelled the statutory change. Therefore, the Court concludes that a 12 day period is consistent with the underlying purpose of the consent judgment.

■ The remaining issue is whether the modification is automatic or whether it is effective only upon action by the Court. We conclude that the change is effective only upon order of the Court. The mandatory language in paragraph 11 of the consent judgment was intended to allow general modifications over the objections of other parties. It was not, however, intended to erase all judicial review. If the Court adopted defendants' interpretation of paragraph 11, it would abdicate its "affirmative duty to protect the integrity of its decree." *Berger v. Heckler*, 771 F.2d 1556, 1568 (2nd Cir.1985); *see also United States v. American Cyanamid Co.*, 719 F.2d 558, 565 (2nd Cir.1983), *cert. denied*, 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984) (modification of consent decree always requires court approval).

Defendants also would have us ignore the portion of paragraph 11 empowering parties to motion the Court following statutory changes. Under defendants' reading, this provision is superfluous. *See Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 171 (5th Cir.1981) (court will presume that all parts of a decree have meaning and must be construed together). Consequently, the Court interprets paragraph 11 as allowing statutory amendments to alter the terms of the con-

---

8. *Rufo* also requires that the modification resulting from the change in law be "suitably tailored to the changed circumstance." 112 S.Ct. at 760. As the modification in the case at bar mirrors the statutory change, this requirement is not at issue.

9. The final figure of 8 days was reached after much negotiation; with defendants originally proposing a 27 day processing period, and plaintiffs proposing 7 days. *See* Plaintiffs' opposition, p. 6.

sent judgment, but only by order of the Court.[10]

Because the Court has previously concluded that the statutory change effected by D.C. Act 10–36 is consistent with the underlying purposes of the consent judgment, we modify paragraph 2 of the judgment, substituting a procession period of 12 days in place of the original 8 days. The Court accomplishes this modification without a formal motion from the parties.

> [E]ven in the absence of express authorization in the decree or request from the parties, the power to modify in appropriate circumstances is inherent in the equity jurisdiction of the court.

*Keith v. Volpe,* 784 F.2d 1457, 1461 (9th Cir.1986).

The circumstances in the case at bar are appropriate for modification under the Court's inherent powers. During a hearing on the three pending motions,[11] the parties thoroughly discussed the ramifications and equities involved in altering the processing period. Judicial resources would be wasted in requiring additional briefing on a matter already resolved. Therefore, the Court modifies the consent judgment.

The Court accepts defendants' evidence and holds that they are in substantial compliance with the 12 day processing period. *See* Defendants' Ex. 5, 6; *see also Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 466 (9th Cir.1989) (substantial compliance is a defense to an action for civil contempt). As defendants are now in compliance with the 1986 consent judgment, we vacate the 1993 contempt order.

### Conclusion

For the foregoing reasons, we deny defendants' motion to vacate the 1986 consent judgment and the 1988 order. On the other hand, we grant defendants' motion to vacate

the 1993 contempt order, and we modify the consent judgment to give the District 12 days in which to process claims for emergency assistance.

An order in accordance with this opinion has been issued this date.

### ORDER

Upon consideration of defendants' motion to vacate the 1986 consent judgment and 1988 order, and defendants' motion to vacate our March 2, 1993 contempt order, it is by the Court this 25th day of February, 1994, hereby

ORDERED that defendants' motion to vacate the 1986 consent judgment and 1988 order is denied; and it is

ORDERED that paragraph 2 of the 1986 consent judgment is modified so that all references to a period of eight (8) working days within which an application will be processed shall be read so as to require processing within a period of twelve (12) days; and it is

ORDERED that defendants' motion to vacate the March 2, 1993 contempt order is granted; and it is

FURTHER ORDERED that this case is dismissed with prejudice.

---

10. Because we hold that court approval is needed before modification, one might question the purpose of the mandatory language in paragraph 11, particularly given the *Rufo* holding requiring flexibility in the institutional reform area. The consent judgment, however, was signed 6 years before *Rufo* concluded that "grievous wrong" is not necessary to modify institutional reform de-

crees. ;—— U.S. at ——–——, 112 S.Ct. at 764–65. That courts have over time adopted the flexible approach envisioned by the parties in this case does not negate the utility of the mandatory language at the time it was adopted.

11. The hearing was held on October 29, 1993.