BRISCOE, Circuit Judge,
concurring and dissenting:
I concur in part and dissent in part. I agree with the majority that plaintiffs’ suit is not barred by the Eleventh Amendment. I disagree, however, with the majority’s conclusions regarding Younger abstention and class certification. I would conclude that Younger abstention is not warranted because plaintiffs do not ask the federal courts to interfere in the periodic reviews in New Mexico Children’s Court, because the periodic reviews do not constitute “ongoing proceedings” sufficient to require abstention, and because the periodic reviews in any event do not afford plaintiffs an adequate . forum and opportunity in which to raise their federal claims. Similarly, I would conclude the district court abused its discretion in denying class certification by applying an incorrect legal standard and misstating the nature of plaintiffs’ alleged class claim.
I. Younger abstention
I begin with the premise that abstention under Younger is appropriate only if the *1294 relief sought by plaintiffs in a federal action will require a federal court to interfere with or enjoin a state proceeding that is judicial in nature. Younger abstention remains the exception rather than the rule, and should be invoked rarely and only in extraordinary circumstances. See Ankenbrandt v. Richards, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). If interference in a state action is sought by plaintiffs, or if not sought will nonetheless occur, Younger abstention is appropriate if: (1) the state judicial proceeding is ongoing; (2) an important state interest is at stake; and (3) there is an adequate opportunity in the state proceeding to raise federal claims. See Middlesex County Ethics Comm. v. Garden State Bar Ass’n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); Seneca-Cayuga Tribe of Oklahoma v. Oklahoma, 874 F.2d 709, 711 (10th Cir.1989).
The majority finds that plaintiffs’ federal actions would interfere with purportedly ongoing state judicial proceedings in New Mexico Children’s Court by “fundamentally changing the disposition and oversight of the children.” The New Mexico Children’s Court has jurisdiction over proceedings brought under the New Mexico Children’s Code where an individual is eighteen years of age or younger and is alleged to be, among other things, delinquent, neglected, abused, or subject to placement for a developmental disability or a mental disorder. See N.M. Stat. Ann. § 32A-1-8(A). Pursuant to its jurisdiction, the Children’s Court, after finding a child has been abused or neglected, may direct that the child remain with his or her parent, place the child under the State’s protective supervision, or transfer legal custody of the child to a noncustodial parent, an appropriate state agency, or a child-placement agency. See id. § 32A-4-22(B). Dispositions of the Children’s Court are reviewed every six months. See id. § 32A-4-25(A). These disposi-tional periodic reviews are the “ongoing and pending state court proceedings” claimed by the majority to justify abstention.
I cannot discern how the relief sought by plaintiffs in their federal action will alter a Children’s Court disposition that a specific child is neglected or abused or should be taken into state custody, the bases on which the Children’s Court makes such determinations, or the manner in which New Mexico oversees children in its care. It is disingenuous to suggest, as the majority does, that plaintiffs seek to “place[ ] the federal court in the role of making ■ dispositional decisions such as whether to return the. child to his parent in conjunction with state assistance or whether to modify a treatment plan.” Throughout this litigation, plaintiffs have emphasized nothing more clearly than their intent not to interfere with child placement or the specifics of an individual child’s treatment plan. Plaintiffs’ solitary goal is to obtain injunctive relief requiring defendants to make available for inclusion in any child’s treatment plan benefits to which plaintiffs claim a constitutional and statutory entitlement. Younger abstention is not warranted merely because New Mexico’s service delivery system will be affected if a federal court grants plaintiffs their requested relief. See New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).
The very posture of this case is inconsistent with Younger abstention. As noted, interference is the touchstone of Younger: “[Ajbstention under Younger presumes that the federal action would interfere with the ongoing state proceedings since, typically, the federal plaintiffs object in filing the federal action is either to seek an injunction against the state proceedings themselves or to challenge the law being applied in those proceedings.” Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1200-01 (3d Cir.1992). Every Supreme Court abstention decision we have found reinforces this general premise and involves a request to enjoin or directly interfere with some state judicial action. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519. 95 L.Ed.2d *1295 1 (1987) (federal plaintiff sought to enjoin enforcement of state court judgment); Ohio Civil Rights Comm’n v. Dayton Christian Schools, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (federal plaintiff sought to enjoin pending administrative proceeding); Middlesex, 457 U.S. 423, 102 S.Ct. 2515 (plaintiff sought to enjoin disciplinary rules instead of filing answer in state court to ethics charges); Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (federal plaintiff sought to enjoin enforcement of state writ of attachment); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (federal plaintiffs sought to enjoin state contempt proceeding).
This case arises in an altogether different context. Plaintiffs do not seek to enjoin any proceeding in the Children’s Court, annul a prior Children’s Court decision, or prevent the Children’s Court from making future determinations. Cf. Wooley v. Maynard, 430 U.S. 705, 711, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (abstention inappropriate where federal suit not “designed to annul the results of a state trial”); Citizens for a Better Env’t v. Union Oil Co., 83 F.3d 1111, 1119 (9th Cir.1996) (Younger “doctrine is simply not relevant where the federal action is not seeking a ruling on the validity of the state action.”). Absent a threat of disruption to New Mexico’s judicial process, the comity and federalism concerns that underlay Younger are not implicated. Cf. Marks v. Stinson, 19 F.3d 873, 884 (3d Cir.1994) (“This is not a case in which the federal plaintiffs are seeking relief which will in any way impair the ability of the state courts ... to adjudicate anything that is currently before them.”); Crawley v. Hamilton County Comm’rs, 744 F.2d 28, 30 (6th Cir.1984) (“In the typical Younger case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings _ [Pjlaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts. Accordingly, there is no basis for Younger abstention in this case.”)
As did the district court, the majority in essence assumes Younger precludes the coexistence of federal and state suits involving abused or neglected children in the custody of the State of New Mexico. This sweepingly broad rule would bar any abused or neglected child in State custody from obtaining federal court access to vindicate violations of federal constitutional and statutory rights. For any such child, a Children’s Court proceeding would always be pending or ongoing. The appropriateness of abstention, however, turns neither on the mere availability of a state judicial forum nor on the existence of parallel federal and state court proceedings. See, e.g., Pennzoil, 481 U.S. at 14 n. 12, 107 S.Ct. 1519 (“Our opinion does not hold that Younger abstention is always appropriate whenever a civil proceeding is pending in a state court.”). As noted, Younger abstention springs from notions of comity, federalism, and respect for state sovereignty, and turns on whether a federal court is called upon to interfere in a state judicial process. The healthiest respect for this rule does not dictate abstention here. Numerous federal courts have exercised jurisdiction over similarly broad child welfare cases, many of them expressly finding Younger abstention inappropriate notwithstanding the presence of periodic reviews in state family courts. See, e.g., LaShawn A. v. Kelly, 990 F.2d 1319 (D.C.Cir.1993); Marisol A. v. Giuliani 929 F.Supp. 662 (S.D.N.Y.1996), aff'd on other grounds, 126 F.3d 372 (2d Cir.1997); Baby Neal v. Casey, 821 F.Supp. 320 (E.D.Pa.1993), rev’d on other grounds, 43 F.3d 48 (3d Cir.1994); Norman v. Johnson, 739 F.Supp. 1182 (N.D.Ill.1990); Wilder v. Bernstein, 645 F.Supp. 1292 (S.D.N.Y.1986).
Even assuming there is a legitimate basis for invoking the Younger abstention doctrine, I am unpersuaded that its application is appropriate in these circumstances. The periodic reviews, which occur every six months, and which are extremely limited in scope, are not “ongoing proceedings” for purposes of Younger abstention. An “ongoing pro *1296 ceeding” implies a proceeding that is continuing and actively in process. Further, and more important, the Children’s Court is not an adequate forum in which plaintiffs’ federal claims could either be raised or fully and fairly adjudicated. New Mexico courts have expressly reiterated that the Children’s Court “is only permitted to do what is specifically authorized by the statute.” In re Angela R., 105 N.M. 133, 729 P.2d 1387, 1391 (App.1986); see State v. Adam M., 124 N.M. 505, 953 P.2d 40, 45 (App.1997). The applicable statute, i.e., the Children’s Code, provides the Children’s Court with jurisdiction to consider only proceedings that arise under the Children’s Code. See N.M. Stat. Ann. § 32A-1-8(A). As relevant here, the Children’s Code explicitly authorizes the Children’s Court to make initial determinations of a child’s status, conduct periodic dispositional reviews of the child’s placement and treatment plan, and alter the treatment plan. See id. § 32A-4-25. There is no language in the Children’s Code that reasonably may be construed as permitting any child in state custody to initiate a federal statutory or constitutional claim in Children’s Court, nor is there any statutory language suggesting jurisdiction of the Children’s Court, extends to officials in any state agencies other than the Department of Children, Youth, and Families. Given the lack of such specific statutory authorization, I would conclude plaintiffs have clearly shown their claims were not cognizable in Children’s Court.
In LaShawn A., 990 F.2d 1319, the D.C. Circuit considered an analogous issue. There, a class action on behalf of foster care children was brought challenging the practices of the District’s Department of Human Services. In LaShawn A, the children were subject to periodic review proceedings every six months, or, in certain circumstances, every year. In affirming the district court’s order finding abstention unwarranted, the court characterized the periodic review proceedings as “an inadequate or inappropriate forum for pursuing these claims.” Id. at 1322. The court ..was particularly concerned with the limited scope of the hearings, which were intended to periodically reassess the disposition of the child, not resolve a “challenge to the District of Columbia’s administration of its entire foster-care system.” Id. at 1323.
These same deficiencies are present here. The purpose of the periodic disposi-tional reviews is not to determine a state official’s compliance with federal laws mandating the provision of specific services, or the constitutional adequacy of New Mexico’s entire service delivery system, but rather to reassess the Children’s Court’s previous determinations regarding custody and treatment. See N.M. Stat. Ann. § 32A-4-25(G); In re Jacinta M., 107 N.M. 769, 764 P.2d 1327, 1328 (App.1988) (“The periodic review is a proceeding to determine whether a change in an initial disposition is warranted by a change in circumstances.”). These determinations are intensely individual, focusing only on the child and his or her family or guardian. The nature of the proceedings does not permit a prolonged, critical, and adversarial examination of the gamut of services being provided to a child in state custody. Moreover, many procedural safeguards that are present in a typical adversarial proceeding, and that are designed to ensure fundamental fairness and the reliability of admitted evidence, are noticeably absent in Children’s Court hearings. For example, the court itself is not required to conduct the review hearing, but may designate that task to a special master, who in turn submits recommendations to the court. See N.M. Stat. Ann. § 32A-4-25(A). And, although evidence may be presented and witnesses cross-examined at the hearing, discovery is limited and the rules of evidence do not apply.[1] See id. *1297 § 32A-4-25(C) & (D). The Children’s Court is not suited to adjudicate the complex constitutional, statutory, and systemic claims raised by plaintiffs. See Wooley, 430 U.S. at 710, 97 S.Ct. 1428 (“Younger principles aside, a litigant is entitled to resort to a federal forum in seeking redress ... for an alleged deprivation of' federal rights.”).
In summary, I believe the district court erroneously invoked Younger. Plaintiffs do not seek to enjoin an ongoing state court proceeding or annul a previously determined state court judgment or order. In addition, the dispositional review hearings in the New Mexico Children’s Court do not constitute ongoing proceedings and do not present plaintiffs an adequate forum in which to air their federal statutory and constitutional grievances.
II. Class certification
The denial of class certification is a more difficult question given that our scope of review is limited to' whether the district court abused its discretion. However, I conclude plaintiffs have satisfied that burden here. An abuse of discretion is established where, as here, the district court errs in its legal interpretation of plaintiffs’ class claim and misapplies the Rule 23 factors used to determine if class certification is appropriate. See Boughton v. Cotter Corp., 65 F.3d 823, 826-27 (10th Cir.1995) (abuse of discretion standard employed only if district court applied correct criteria to facts of case).
Before addressing the merits of the district court’s class certification order and the majority’s resolution of the class certification issues, it is necessary to elaborate on the nature of the class claim brought by plaintiffs. Plaintiffs do not seek redress for any individual state decisionmaker’s determination that services need not be provided to a specific child. Indeed, the specific services that are or are not being provided to a particular child apparently are not at issue in this lawsuit. Plaintiffs’ complaint instead is systemic: They eon-tend the entire gamut of support programs and services for children in state custody is deficient.
The central theory in the complaint is that, when children with mental and behavioral disabilities are brought into state custody, defendants have failed to develop a system which has the capacity to meet the special needs these children have because of their disabilities. Plaintiffs allege that these systemic failures constitute violations of various federal laws, and result in discrimination against them because of their disabilities.
Aplt.’s Br. at 29. Plaintiffs do not seek money damages, but only declaratory and injunctive relief requiring defendants to provide a sufficient “care and program delivery system.” In essence, plaintiffs seek an injunction requiring defendants to put into place policies and plans to ensure that children matriculating into state custody receive the screening and other services to which they are entitled under federal law. Bearing in mind the nature of plaintiffs’ class claim, I turn to the merits of the district court’s decision denying certification.
I am not convinced that the district court applied the appropriate legal standard in concluding the commonality and typicality prongs of Rule 23(a) were not satisfied. The district court stated as follows in its order:
In the present matter, the sixteen named Plaintiffs have stated claims under the Rehabilitation Act, the ADA, the Medicaid Act, and the IDEA. They also assert violations of their substantive due process rights to minimally adequate treatment, family integrity, and access to judicial process. Some named Plaintiffs and putative class members have allegedly suffered violations of only one of the statutory and constitutional rights listed above. Other named Plaintiffs and putative class members have allegedly suffered violations of two or three of the statutory or constitutional rights *1298 listed above. However, to the Court’s knowledge, no named Plaintiff and no putative class member has allegedly suffered violations of all or even most of the statutory and constitutional rights listed supra.
The Court must therefore conclude that there is no one statutory or constitutional claim common to all named Plaintiffs and all putative class members. Rather, each statutory and constitutional claim is common to an imprecisely defined subset of some named Plaintiffs and some putative class members. Thus, there can be no one legal theory or factual issue common to all Plaintiffs and all putative class members. Nor can the claims of the class representatives and the class members be based on the same legal or remedial theory....
... [T]he Court finds that the members of the proposed class do not satisfy the prerequisite of commonality because they are insufficiently subject to the risk that they may suffer from all of Defendants’ alleged violations.
K.L. v. Valdez, 167 F.R.D. 688, 691-93 (D.N.M.1996) (citations omitted).
The insinuation in the district court’s statement-that all class members must suffer or be at risk of suffering from all (or even more than one) of defendants’ alleged violations-is not only contrary to well-settled law but inconsistent with the court’s earlier recognition that one issue of common fact or law is sufficient for commonality purposes. Pursuant to the rule applied by the district court, no action could proceed as a class unless each named plaintiff uniformly asserted the same legal claims or suffered the same injuries at the same time. The district court’s analysis is more akin to one applied to a Rule 23(b)(3) class action than a Rule 23(b)(2) class action. The differences are significant. Rule 23(b)(3) is a broad catch-all provision allowing the district court to certify a class in its discretion when to do so would conserve the resources of the judiciary and the parties by resolving the dispute via a class action rather than numerous individual suits. Class certification under Rule 23(b)(3) is appropriate only if the “questions of law or fact common to the members of the class predominate over any questions affecting only individual members.” (Emphasis added). This predomi-nation requirement makes sense in a Rule 23(b)(3) context because these cases generally involve highly individualized claims or require an individualized plaintiff-by-plaintiff determination of monetary damages. See 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1777, at 516-17 (1986). The nature of a Rule 23(b)(2) action obviates the need for common issues to predominate because injunctive relief is sought that, if granted, will cure the ills suffered by every named plaintiff and class member. Few, if any, individualized determinations need be made in a Rule 23(b)(2) class action. See id. § 1763, at 201 (“Class suits for injunctive or declaratory relief by their very nature often present common questions satisfying” commonality.).
The district court compounded its error by disregarding the complaint and relying on a stipulation that it directed the parties to craft. The court required the parties to “stipulate to as many facts as possible” as to “the present custodial status of each named Plaintiff and the services currently being provided to those Plaintiffs.” Aplt.’s App. at 114. The parties presented a stipulation to the court which set forth each service each named plaintiff was receiving. In denying class certification, the district court essentially ignored the allegations of the complaint and, based on this stipulation, determined exactly what services it appeared each named plaintiff was allegedly being deprived of in violation of federal law. This was, first and foremost, an independent determination of the merits of plaintiffs’ claims. It is well-settled that the district court may not examine the merits in deciding a motion for class certification. See Anderson v. City of Albu *1299 querque, 690 F.2d 796, 799 (10th Cir.1982). Even more unsettling is that the stipulation is useless in determining whether common issues exist, or whether the claims of the named plaintiffs are typical of the claims of the absentee class members. The district court’s misuse of this stipulation renders its entire certification analysis suspect. The stipulation does not reveal, as does the complaint, that plaintiffs were seeking systemic relief and not just asserting individual violations of federal statutes.
Applying the appropriate legal standards to the facts alleged in the complaint, I would conclude the commonality and typicality requirements are satisfied and a class should have been certified. As previously stated, plaintiffs do not seek redress for individual deprivations, but seek systemic relief that, if obtained, will remedy every violation suffered by any child in state custody. Hence, the dominant common legal theme asserted by every plaintiff is that the systemic deficiencies in the defendant’s treatment service system deprive all children in state custody who suffer from mental and developmental disorders of rights guaranteed them by statute or the Constitution. This satisfies Rule 23(a)(2)’s commonality requirement. See Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir.1994) (“Because the requirement may be satisfied by a single common issue, it is easily met.”) (citing H. Newberg & A. Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992)).
Typicality is also present. Rule 23(a)(3) precludes certification unless “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” Typicality does not require that the claims of class members be identical to the claims of the class plaintiffs. See Anderson, 690 F.2d at 800. “[Djiffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory.” Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir.1988).
In concluding plaintiffs failed to show typicality, the district.court stated “there are potential conflicts of interest between the named Plaintiffs and the putative class.” 167 F.R.D. at 692. The district court saw potential conflicts in that some named plaintiffs were pursuing statutory claims that were not being pursued by other named plaintiffs. Thus, according to the district court, if one plaintiff was pursuing only an IDEA claim and another was pursuing only a Medicaid Act claim, each would be tempted to ignore the statutory claim of the other in vigorous pursuit of their own claim.
The potential conflict perceived by the district court is minimal, if it exists at all. As noted, the district court did not accurately characterize the nature of plaintiffs’ complaint. The court reads the complaint as asserting causes of actions under particular federal statutes alleging a particular child has been deprived of a particular service or treatment to ’which the child is entitled under federal law. The court ignores that the crux of the complaint is the claim alleging the very process that occurs in the course of a child’s matriculation into state custody is discriminatory and unconstitutional. Plaintiffs seek comprehensive, not individual, relief.
When viewed in this light, the named plaintiffs have an incentive to show every facet of treatment or services provided by defendants is inadequate and is a byproduct of a system-wide deficiency. Emphasis by a named plaintiff on a claim alleged by that plaintiff but not by another named plaintiff or class member would be inconsistent with this incentive and would serve only to demonstrate a failure to provide a particular federally-mandated service or type of treatment, not a systemic inadequacy. This would undermine every plaintiffs claims that there are systemic deficiencies in the process employed by defendants to determine what services are needed, are required by federal law, and are to be provided to a child upon entry into state custody. See Baby Neal, 43 *1300 F.3d at 58 (noting “a typicality requirement is almost automatically satisfied in actions primarily seeking injunctive relief’).
Finally, I find troubling the majority’s unexplained rejection of two cases from our sister circuits that have dealt with this precise issue. Both Marisol A. v. Giuliani 126 F.3d 372 (2d Cir.1997) and Baby Neal, 43 F.3d 48, were systemic child welfare cases in which class certification was sought. In Marisol A., the Second Circuit permitted a class to be certified; in Baby Neal, the Third Circuit required a class to be certified.
In Marisol A, a class action was brought on behalf of New York City children alleging the New York City child welfare system was systemically deficient in failing to provide adequate services in violation of a number of federal and state laws and the United States Constitution. With some reservations, a panel of the Second Circuit upheld the district court’s decision to certify a class. Defendants, not surprisingly, contended commonality was present only at the “grossest level of generality,” and typicality was entirely nonexistent:
The defendants point out that each named plaintiff challenges a different aspect of the child welfare system. These include allegations of inadequate training and supervision of foster parents, the failure to properly investigate reports of suspected neglect and abuse, unconscionable delay in removing children from abusive homes, and the inability to secure appropriate placements for adoption.... The claimed deficiencies implicate different statutory, constitutional, and regulatory schemes. Further, the defendants note that no single plaintiff (named or otherwise) is affected by each and every legal violation alleged in the complaint, and that no single specific legal claim identified by the plaintiffs affects every member of the class.
126 F.3d at 376-77. The district court had rejected these arguments by characterizing the common questions of law as “whether defendants systematically have failed to provide ... legally mandated services.” Id. at 377. “The unique circumstances of each child do not compromise the common question of whether ... defendants have injured all class members by failing to meet their federal and state law obligations.” Id. On appeal, the court held that “conceptualizing the common legal and factual questions at this high level of abstraction” — by aggregating them into a “super-claim” — did not constitute an abuse of discretion. Id. The court conceded this generalized characterization “stretchefd] the notions of commonality and typicality,” but found it convincing that plaintiffs’ injuries allegedly derived from a single deficient system’s unitary course of conduct. Id.
One apparently significant factor in the Second Circuit’s decision in Marisol A. was the. Third Circuit’s decision in Baby Neal. In Baby Neal, a class action was brought on behalf of children in the custody of the Philadelphia Department of Human Services, which operated the City’s child welfare system. The complaint alleged systemic claims very similar to those in Marisol A. and those here. Unlike in Marisol A, the district court in Baby Neal denied class certification on grounds that plaintiffs had failed to show commonality and typicality. The district court’s order in the instant case is essentially a verbatim copy of the district court’s order in Baby Neal. For example, the district court in Baby Neal found commonality was not satisfied because not “one of the common legal issues asserted by plaintiffs applies to every member of the proposed class.... The children’s claims are based upon different legal theories depending on the individual circumstances of that child.... The services required to meet the needs of one child are vastly different from that of another child.” 43 F.3d at 60. Similarly, the district court found no typicality because “the plaintiffs were not challenging precisely the same conditions and practices because the- services required by *1301 law differ depending on a child’s individual situation.” Id. at 63.
The Third Circuit in reviewing this ruling held denial of certification was an abuse of discretion. In rejecting the district court’s finding of no commonality, the court characterized plaintiffs’ complaint as “challenging common conditions and practices under a unitary regime.” Id. at 60. The district court had overly fragmented the claims, emphasizing factual and legal individual differences that were “largely irrelevant” in light of the nature of injunc-tive relief sought. Id. Significantly, the district court in Baby Neal failed to recognize that remedying the systemic deficiencies would of necessity cure each plaintiffs’ alleged injuries regardless of what services were being deprived that plaintiff. It was therefore a sufficiently common legal basis for class certification purposes that plaintiffs attacked the “systemic deficiencies in providing legally mandated child care services.” Id. at 61. In short, the “violations exist[ed] independently of individual- children’s circumstances.” Id. at 62. The Third Circuit found the district court’s typicality findings equally unpersuasive. The systemic deficiencies, not individual differences, were central to the claims of the named plaintiffs and class members. There was “no danger ... that the named plaintiffs have unique interests that might motivate them to litigate against or settle with the defendants in a way that prejudices the absentees.” Id. at 63.
The facts of this case are as compelling as those in Baby Neal. The district court here denied class certification by citing factual differences that are largely irrelevant to the class issue and misconstruing the unitary systemic claim on which plaintiffs’ proposed class rests. If the requirements of Rule 23(a) are met and one of the requirements of Rule 23(b) is met, then the district court lacked discretion not to certify a class. When this case is analyzed under the appropriate legal framework, plaintiffs’ claims satisfy the Rule 23 requirements. I would reverse the district court’s denial of class certification and remand the case to the district court.
III. Conclusion
I concur in the majority’s conclusion that plaintiffs are not barred by the Eleventh Amendment from proceeding in federal court. I dissent from the majority’s conclusions both that Younger abstention is warranted under the facts of this case and that the district court did not abuse its discretion in denying class certification.

. Plaintiffs have taken the unusual step of obtaining two affidavits from Children's Court judges who attest the Court historically has not handled cases involving the federal rights of children. The judges also claim clogged dockets, limited discovery, and the summary nature of the proceedings render the court a *1297 poor forum in which'to adjudicate matters of • such magnitude.' Aplt.’s App. at 762-65.