PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

**F I L E D**
United States Court of Appeals
Tenth Circuit

**AUG 12 1999**

**PATRICK FISHER**
Clerk

J.B., a child, by FREDERIC M.
HART, his next friend; Y.A., D.A.,
E.A., F.A., V.C., and C.C., by ELLA
JOAN FENOGLIO, their next friend;
R.E., C.E., J.E., and E.E., children, by
BARBARA E. BERGMAN, their next
friend; J.S., a child, by PETER H.
JOHNSTONE, his next friend; on
behalf of themselves and all others
similarly situated,

        Plaintiffs - Appellants,

   v.

J. ALEX VALDEZ, Secretary of the
New Mexico Department of Health;
WILLIAM H. JOHNSON, JR.,
Secretary of the New Mexico Human
Services Department; HEATHER
WILSON, Secretary of the New
Mexico Children, Youth and Families
Department; MICHAEL J. DAVIS,
State Superintendent of Public
Instruction; ELEANOR ORTIZ,
President of the State Board of
Education; VAN W. WITT, Vice
President of the State Board of
Education; MARLIS E. MANN;
EMMALOU RODRIGUEZ, Secretary
of the State Board of Education;
RUDY CASTELLANO; WALLACE
DAVIS; ROGER LENARD; LYNN
MEDLIN; DARL MILLER;

No. 96-2278

BEVERLY R. O'DELL; MILLIE POGNA; STEVEN SCHMIDT; CATHERINE M. SMITH; FLORA SANCHEZ; and DAVID STEINBORN, members of the State Board of Education,

      Defendants - Appellees.

----------------------------

CHILDREN'S RIGHTS, INC.,

      Amicus Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CIV-93-1350-BB)**

Joseph Goldberg, Freedman, Boyd, Daniels, Hollander, Guttman & Goldberg, Abuquerque, New Mexico (Jane B. Wishner, Browning & Peifer, Albuquerque, New Mexico, and Peter Cubra, Albuquerque, New Mexico, with him on the briefs), appearing for Plaintiffs-Appellants.

John H. Clough, Assistant Attorney General, (Robert T. Booms, Assistant Attorney General, State of New Mexico, Santa Fe, New Mexico, with him on the brief), appearing for Defendants-Appellees.

Marcia Robinson Lowry and Suzanne Nossel, for Children's Rights, Inc., New York, New York, filed an amicus curiae brief.

Before **TACHA** , **BALDOCK** , and **BRISCOE** , Circuit Judges.

**TACHA** , Circuit Judge.

- 2 -

Plaintiffs, sixteen mentally or developmentally disabled children who are or were in the custody of the state of New Mexico, brought this action for declaratory and injunctive relief alleging that defendants have failed to provide protections and therapeutic services required by federal statutes and the United States Constitution. Plaintiffs sought to certify a class comprised of "[a]ll children who are now or in the future will be (a) in or at risk of State custody and (b) determined by defendants and/or their agents to have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support." Appellants' App., Vol. 2, at 226. The district court denied class certification and further abstained from hearing the case. Twelve of the sixteen original plaintiffs appeal these rulings.[1] We affirm.

## I. Procedural History

Plaintiffs, through their next friends, seek structural reform of New Mexico's system for evaluating and treating children with mental and

[1]The district court entered judgment on C.E., J.E., E.E., J.S., Y.A., D.A., E.A., F.A., V.C., C.C., R.E., and J.B. pursuant to Fed. R. Civ. P. 54(b), finding no just reason for delay in this case. The district court did not, however, make any mention of K.L. or M.H., and the parties agree that they are not parties to this appeal. The court also did not enter judgment on A.S. and R.W.'s claims because it did not abstain from hearing their individual cases as it did the others. R.W.'s case is now moot, and he has not appealed. Furthermore, we denied the motion of A.S. to consolidate his appeal with the current one, and his claims have since become moot. Therefore, neither R.W. nor A.S. are parties to this appeal.

developmental disabilities in its custody.  The stories of the named plaintiffs

reveal a child welfare system having terrible difficulties providing the children

with the kind of care and treatment they deserve.

In an effort to improve the services and protections provided by the state

and to effect system-wide change, plaintiffs initiated this action in November

1993 by filing a class action complaint.  They amended the complaint in March

1994, alleging that the defendants, several New Mexico state officers, [2] had

violated the Rehabilitation Act of 1973, the Americans with Disabilities Act

("ADA"), the Medicaid Act, the Alcohol, Drug Abuse and Mental Health

Reorganization Act ("ADAMHRA"), the Individuals with Disabilities Education

Act ("IDEA"), and the Fourteenth Amendment.  In essence, plaintiffs charged the

state with failing to provide them services, benefits, and protections guaranteed

by federal statutory and constitutional law.  In May 1995, the parties entered into

a stipulation of additional facts to provide the district court with an update

regarding the custodial status of the named plaintiffs.  The parties informed the

court that they intended it to consider this stipulation as part of the complaint.  On

---

[2]Plaintiffs sued the officers in their official capacities.  Those named in plaintiffs' second amended complaint include: the Governor; Secretary of the New Mexico Department of Health; Secretary of the New Mexico Human Services Department; Secretary of the New Mexico Children, Youth and Families Department; State Superintendent of Public Instruction; President of the State Board of Education; Vice President of the State Board of Education; Secretary of the State Board of Education; and members of the State Board of Education.

October 6, 1995, the district court dismissed with prejudice plaintiffs' claims under the ADAMHRA and certain claims under the IDEA, as well as some claims against the Secretary of the New Mexico Department of Health, the Secretary of the New Mexico Human Services Department, and members of the State Board of Education. In addition, the district court dismissed without prejudice certain claims under the Rehabilitation Act, the ADA, and the Fourteenth Amendment. Plaintiffs do not appeal from these rulings.

In March 1994, plaintiffs moved for class certification. The district court sua sponte ordered the parties to stipulate to additional facts regarding the current status of each named plaintiff. The parties filed this second stipulation of facts on May 10, 1996. On June 26, 1996, after all of the above filings and order of dismissal, the district court denied class certification. In October 1996, the district court granted reconsideration of its previous denial of defendants' February 1995 motion to abstain. Upon reconsideration, the district court found abstention appropriate based on Younger v. Harris, 401 U.S. 37 (1970), and its progeny.

Plaintiffs appeal the district court's denial of class certification and decision to abstain. Defendants, for the first time on appeal, additionally argue that the Eleventh Amendment precludes us from hearing this case.

## II. Factual Background

Plaintiffs estimate, and defendants do not dispute, that New Mexico has approximately 3000 children in its custody and that at least 1000 have mental or developmental disorders. Children with disabilities in state custody may receive a range of treatments, from in-home support services for the family to complete institutionalization. As shown by the complaint and succeeding stipulations of fact, the named plaintiffs have varied backgrounds, needs, and custodial situations. For the purposes of this appeal, we take the allegations contained in the complaint as true. See 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 7.26 (3d ed. 1992). Moreover, because the complaint does not tie any of its broad allegations with the individual named plaintiffs, we have liberally construed, with the help of the district court's order of dismissal, the violations that pertain to each child.

J.B. has at least six mental and developmental disabilities. Fourteen years old at the time of the complaint, the state had placed him in custody two years earlier because of parental abuse. The state first placed him in a children's psychiatric hospital for evaluation and treatment before moving him to a special needs foster home, two private psychiatric hospitals, a group home, a residential treatment center, a homeless shelter, and a regular foster home. At the time of the complaint, J.B. resided in a special needs foster home. However, according to the 1995 stipulation, New Mexico had placed him in eleven separate facilities or

programs since then. He frequently ran away from these environments and was once arrested for shoplifting. According to the 1996 stipulation of facts, the state placed J.B. in a juvenile detention center for a period of time. At the latest update, he resided in a motel and received social worker and parole officer services. Plaintiffs allege that defendants violated the ADA and Rehabilitation Act by placing J.B. in an overly restrictive environment, failing to facilitate a permanent placement for him, and failing to provide him with an appropriate educational program. They further claim a violation of the IDEA because J.B. received no appointed surrogate parent to protect his educational rights.

Y.A., D.A., E.A., F.A., V.C., and C.C. are siblings who each have several developmental, emotional, and behavioral disabilities. The state took them into custody in 1990 and has moved them repeatedly, never placing more than two of the siblings together. According to the 1995 stipulation, Y.A. had received eleven placements since the complaint. By 1996, Y.A. had turned eighteen, and the state had discharged her from custody. She currently receives social security benefits. The state initially placed D.A. in a residential treatment center. The 1995 stipulation indicates that he lived with his mother, except for a week spent at a juvenile detention center after an arrest. By May 1996, a judicial order had discharged him from state custody at the age of sixteen. At that time, D.A. lived in the family home and received social security benefits while his family received

support services from defendants. E.A., F.A., V.C., and C.C. received placements in foster homes. The subsequent stipulations of facts indicate that the state returned them to their mother's care and discharged them from state custody.

Plaintiffs argue that defendants violated the rights of each of these siblings under the ADA and Rehabilitation Act because they placed them in overly restrictive settings and failed to provide them with appropriate educational programs. They further claim that defendants violated these children's Fourteenth Amendment right to family integrity by placing them in separate locations. They allege an additional violation to Y.A., D.A., E.A., and F.A.'s rights for failure to facilitate a permanent placement.

The state took custody of siblings R.E., C.E., J.E., and E.E. because of abuse and neglect, returning them to their mother after one year. R.E. suffers from emotional and behavioral disabilities, while C.E., J.E., and E.E. have developmental and behavioral disabilities. With respect to R.E., her mother did not want her returned because the state did not provide in-home services and three disabled sons overwhelmed her. By May 1995, a judicial order discharged R.E. from state custody although she remained under the protective supervision of the Children, Youth and Families Department ("CYFD"). She also received Medicaid services. The other siblings were placed in a variety of locations. According to the 1995 stipulation, C.E. had resided in foster homes, psychiatric hospitals, and a

companion home operated by the Association of Retarded Citizens and had a treatment guardian. J.E. also lived in the companion home. Meanwhile, E.E. resided in various foster homes, a temporary respite home, and the companion home and has had a treatment guardian appointed. By the 1996 update, C.E. and J.E. resided in a foster home operated by the Association of Retarded Citizens, have had a surrogate appointed, and received social security benefits and case management, psychological, and special education services. E.E. resided in a different foster home and received services similar to his siblings. Plaintiffs allege that New Mexico officials violated the ADA and Rehabilitation Act by failing to provide in-home services to R.E., C.E., J.E., and E.E., and appropriate educational and therapeutic services to R.E. and C.E. They further claim that defendants failed to preserve the siblings' family integrity by placing them in different settings.

J.S. suffers from physical, developmental, and behavioral disabilities. In custody for one year at the time of the complaint, J.S. initially received a foster home placement but was returned to his mother briefly. His mother placed him back in state custody because the state provided no in-home support and stopped paying for his medication. J.S. resided in a foster home at the time of the complaint. By the 1995 stipulation, the state had appointed a surrogate parent and treatment guardian and, by 1996, placed J.S. in a state foster home which

provided services such as psychological and medical treatment.  Plaintiffs allege a violation of the ADA and Rehabilitation Act because J.S. did not receive adequate in-home services.  They further claim that defendants violated the Medicaid Act by failing to inform J.S. of the availability of Medicaid screening and not administering entitled tests.  Finally, defendants allegedly violated J.S.'s right to family integrity because they made no reasonable attempt to return him to his home.

### III. Eleventh Amendment

Defendants assert, for the first time on appeal, Eleventh Amendment immunity from this federal court suit.  Because of its jurisdictional nature, defendants may raise this defense at any stage of the proceedings.  See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1231 (10th Cir. 1999); 13 Charles Alan Wright et al., Federal Practice and Procedure: Jurisdiction 2d, § 3524 (2d ed. 1984 & Supp. 1998).  We must address this jurisdictional question to determine whether we can reach the class certification and abstention issues.

"The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state."  Elephant Butte Irrigation Dist. of N.M. v. Department of the Interior, 160 F.3d 602, 607 (10th Cir.) (citing Hans v. Louisiana, 134 U.S. 1, 13-15 (1890)), cert. denied sub nom. Salisbury v. Elephant Butte Irrigation Dist. of N.M., 67 U.S.L.W. 3497

- 10 -

(U.S. Mar. 22, 1999). However, three primary methods exist "for circumventing the Eleventh Amendment and allowing federal courts to ensure state compliance with federal laws." Erwin Chemerinsky, Federal Jurisdiction 389 (3d ed. 1999); see also Elephant Butte, 160 F.3d at 607; ANR Pipeline Co. v. LaFaver, 150 F.3d 1178, 1187-88 (10th Cir.), cert. denied, 119 S. Ct. 904 (1999). First, a state may consent to the action. See, e.g., Elephant Butte, 160 F.3d at 607; ANR Pipeline, 150 F.3d at 1188. Second, "Congress may clearly and expressly abrogate the states' immunity." Elephant Butte, 160 F.3d at 607; see also, e.g., ANR Pipeline, 150 F.3d at 1188. Third, a party may sue a state official pursuant to Ex Parte Young, 209 U.S. 123 (1908). See Elephant Butte, 160 F.3d at 607. Under the Ex Parte Young doctrine, "the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune." Id. at 607-08 (citing Ex parte Young, 209 U.S. at 159-60). Thus, because plaintiffs in this case name state officers as defendants and seek only prospective injunctive relief, it seems to fit squarely within the traditional application of Ex parte Young.

The defendants, however, argue that the Supreme Court in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), limited the application of Ex parte Young and recognized the appropriateness of Eleventh Amendment immunity in this type of case. In Coeur d'Alene Tribe, the Court found that the Eleventh

Amendment barred the tribe's action seeking declaratory judgment and prospective injunctive relief to establish its ownership and control over submerged lands that lie within the 1873 boundaries of the reservation. See Coeur d'Alene Tribe, 521 U.S. at 264-65, 286-88. The majority found that the requested relief "is the functional equivalent of a quiet title action which implicates special sovereignty interests." Id. at 281. In examining the significance of Coeur d'Alene Tribe, we recently explained:

> After cataloguing the deep historical roots, and the legal importance, of state regulatory control over, and public ownership of, streams and lakes, the Court ruled that the Ex parte Young doctrine may not be used to support prospective federal court injunctive relief against state officials when that relief is just as much an intrusion on state sovereignty as an award of money damages[.]

ANR Pipeline, 150 F.3d at 1190 (citing Coeur D'Alene Tribe, 521 U.S. at 286-87). Therefore, Coeur d'Alene Tribe imposes an important additional requirement. "We must examine whether the relief Plaintiffs seek against the state officials 'implicates special sovereignty interests,' and 'whether that requested relief is the functional equivalent to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment.'" Elephant Butte, 160 F.3d at 609 (quoting ANR Pipeline, 150 F.3d at 1190).

We have noted that the result in Coeur d'Alene Tribe "reflects the extreme and unusual case in which, although the doctrine of Ex parte Young under traditional principles is applicable, the suit is prohibited because it involves

- 12 -

'particular and special circumstances' that affect 'special sovereignty interests' and cause 'offense to [the state's] sovereign authority.'" Id. at 612 (quoting Coeur d'Alene Tribe, 521 U.S. at 281-82, 287). Our conclusion that Coeur d'Alene Tribe imposes a narrow limitation on Ex parte Young is reinforced by the fact that seven Justices rejected a reformulation of the Eleventh Amendment doctrine that would have sharply limited Ex parte Young. See Coeur d'Alene Tribe, 521 U.S. at 291-92 (O'Connor, J., concurring in part and concurring in the judgment); id. at 297-98 (Souter, J., dissenting). Our recent decision in ANR Pipeline reflects the limited scope of the additional Coeur d'Alene Tribe factors. In that case, we held that the power to assess and levy personal property taxes on land within the state of Kansas constituted a special sovereignty interest. See ANR Pipeline Co., 150 F.3d at 1190-94. After declaring that "a state's sovereign power to tax its citizens has been a hallmark of the western legal tradition," id. at 1193 n.16, and that "Congress has made it clear in no uncertain terms that a state has a special and fundamental interest in its tax collection system," id. at 1193, we stated: "We do not doubt, therefore, that a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty. Indeed, . . . it is impossible to imagine that a state government could continue to exist without the power to tax," id.

In the instant case, no comparable special sovereignty interests are at

- 13 -

stake.[3]  A state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young.  See Doe v. Chiles, 136 F.3d 709, 720 (11th Cir. 1998) (asserting, without addressing 'special sovereignty interest' requirement, that case in which developmentally disabled individuals brought § 1983 action against officials for failure to furnish Medicaid assistance with reasonable promptness "fit neatly within the Ex parte Young exception"); Marie O. v. Edgar, 131 F.3d 610, 616-17 & n.13 (7th Cir. 1997) (finding no important sovereignty interests such as those at issue in Coeur d'Alene Tribe in suit brought by infants with disabilities against state officials alleging that state did not comply with early intervention requirements of IDEA and seeking to enforce compliance with the federal program under which the officials had accepted funds); cf. Elephant Butte, 160 F.3d at 612-13 (holding state's property interest in right to profits from a recreational land lease did not rise to the level of a "special sovereignty interest").  Additionally, a challenge to the administration of a welfare program is not the equivalent of a suit for money damages, nor does it strike at a state's fundamental power, such as the power to tax.  Cf. ANR Pipeline, 150 F.3d at 1193.

_____

[3]Defendants only fleetingly mention that this lawsuit affects the state's sovereignty to administer its various child welfare programs and provide no argument or reasoning why this interest should enjoy special status.

Because we find that the present suit does not impinge upon the sort of special sovereignty interest contemplated by the Supreme Court in *Coeur d'Alene Tribe*, we hold that the *Ex parte Young* doctrine precludes defendants' Eleventh Amendment immunity defense. Furthermore, as the Eleventh Amendment poses no bar to any claim in this action, we need not address whether the ADA, Section 504 of the Rehabilitation Act, and/or the IDEA contain valid statutory abrogations of Eleventh Amendment immunity under § 5 of the Fourteenth Amendment.

## IV. Class Certification

As we have jurisdiction to hear this suit, we must next address class certification. "The decision to grant or deny certification of a class belongs within the discretion of the trial court. We will not interfere with that discretion unless it is abused. There is no abuse of discretion when the trial court applies the correct criteria to the facts of the case." *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (internal citations and quotation marks omitted); *see also, e.g.*, *Boughton v. Cotter Corp.*, 65 F.3d 823, 826 (10th Cir. 1995). After carefully reviewing the record and the district court's opinion, we hold the district court did not abuse its discretion in denying class certification.

Plaintiffs in this case sought to certify a class composed of "all children who are now or in the future will be (a) in or at risk of State custody and (b) determined by defendants and/or their agents to have any form of mental and/or

developmental disability for which they require some kind of therapeutic services or support." Appellants' App., Vol. 2, at 226.  The trial court may certify a class only if, after rigorous analysis, it determines that the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a).      See General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982);    Reed, 849 F.2d at 1309.  Rule 23(a) imposes four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, those seeking declaratory or injunctive relief must meet the requirements of Rule 23(b)(2), which states that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The district court in this case found plaintiffs had failed to meet the Rule 23(a) requirements for commonality and typicality.  Plaintiffs contest the validity of the district court's reasoning and conclusions regarding those class action prerequisites.

As the district court observed, "commonality 'requires only a single issue common to the class.'"    K.L. v. Valdez , 167 F.R.D. 688, 690 (D.N.M. 1996)

- 16 -

(citing Newberg & Conte, supra, at § 3.12); see also In re American Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996); Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). Thus, "[t]he commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997); see also Newberg & Conte, supra, at § 3.10. Further, "[t]hat the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988); see also Milonas v. Williams, 691 F.2d 931, 939 (10th Cir. 1982). [4]

---

[4]The district court in this case correctly set forth these principles, but it concluded by holding, "In the present matter, the Court finds that the members of the proposed class do not satisfy the prerequisite of commonality because they are insufficiently subject to the risk that they may suffer from all of Defendants' alleged violations." K.L., 167 F.R.D. at 693. Plaintiffs claim this shows the court applied an improper heightened standard requiring the class to have commonality on all legal claims.

Although imprecise, the above statement, in light of the entire opinion, does not support the allegation that the judge applied the wrong legal standard to support his decision. Thus, this phrase alone does not warrant reversal. Instead, we interpret this statement to simply reiterate the court's earlier finding:

> that there is no one statutory or constitutional claim common to all named Plaintiffs and putative class members. Rather, each statutory and constitutional claim is common to an imprecisely defined subset of some named Plaintiffs and some putative class members. Thus, there can be no one legal theory or factual issue common to all Plaintiffs and all putative class members. Nor can the claims of the class representatives and the class members be based on the same legal or remedial theory.

- 17 -

The diverse situations of the named plaintiffs show there is no question of fact common to the class. Even plaintiffs note:

> These children come into the custody of the state in a variety of ways. Most are taken out of their natural homes by the Department of Children, Youth and Families (CYFD) because of abuse and neglect determinations. These children then are placed in foster homes, residential treatment centers, group homes, temporary shelters, or psychiatric hospitals. Some children are taken into the custody of the State through the juvenile corrections system and they are placed in the Boys School or Girls School, the Youth Diagnostic and Development Center, the Sequoyah diagnostic and treatment facility, or sometimes, in psychiatric hospitals.

Appellants' App., Vol. 2, at 230-31. Thus, the ways in which these children come into state custody as well as their particular placements once in custody differ drastically. For example, the state took J.B., R.E., C.E., J.E., and E.E. into custody because of parental abuse or neglect. In contrast, some children in the proposed class entered state custody after conviction of a criminal offense. R.W., a named plaintiff before the district court but who did not appeal from the denial of class certification, illustrates this; he entered state custody as a convicted sex offender. The complaint does not even note why Y.A., D.A., E.A., F.A., V.C., C.C., and J.S. became wards of New Mexico. Similarly, some children have resided primarily in residential treatment centers and boys' schools, while others

K.L., 167 F.R.D. at 691 (citations omitted). Therefore, the district court applied the correct legal standards to the facts of this case.

have stayed with foster families and parents during the course of state custody. Many have moved frequently among the various living arrangements and programs in the state of New Mexico.

Hence, as these examples and the factual background provided above demonstrate, the circumstances of these children vary greatly. Other than all being disabled in some way and having had some sort of contact with New Mexico's child welfare system, no common factual link joins these plaintiffs. We cannot say that the district court abused its discretion in finding no factual commonality in the proposed class.

We also affirm the district court's finding of no common question of law. The court concluded that "there is no one statutory or constitutional claim common to all named Plaintiffs and all putative class members." K.L., 167 F.R.D. at 691. Plaintiffs respond that the common claim is "that systemic failures in the defendants' child welfare delivery system deny all members of the class access to legally-mandated services which plaintiffs need because of their disabilities." Appellants' Br. at 25. We refuse to read an allegation of systematic failures as a moniker for meeting the class action requirements. Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind. For example, in Wilder v. Bernstein, a class action child welfare case on which

plaintiffs rely, the plaintiffs, black Protestant children, challenged New York's law for providing child welfare services as unconstitutionally discriminatory. See 499 F. Supp. 980, 982 (S.D.N.Y. 1980). All class members claimed the system denied them placements because of their race and religion. See id. Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of "systematic failures." We refuse to hold, as a matter of law, that *any* allegation of a systematic violation of various laws automatically meets Rule 23(a)(2). The district court retains discretion to determine commonality because it is "in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and . . . to select the most efficient method for their resolution." Boughton , 65 F.3d at 825. Given the complex facts and legal issues involved in this case, we cannot say the district court abused its discretion when it refused to characterize plaintiffs' claims as a systematic violation. [5]

Plaintiffs do not rely solely on their "systematic" theory of commonality, however. They contend that, at the very least, all putative class members suffer, or will suffer, violations of the Medicaid Act, the ADA, and the Rehabilitation

---

[5]We recognize that this conclusion differs from that reached by the Third Circuit in a similar case. See Baby Neal v. Casey , 43 F.3d 48, 60-62 (3d Cir. 1994).

- 20 -

Act. We have closely reviewed plaintiffs' second amended complaint in an effort to match legal claims with each plaintiff. [6] This proved difficult because the complaint fails to specifically tie the particular allegations with individual children. Instead, it states the factual circumstances of each child and then, in very general terms, alleges violations of the ADA, Rehabilitation Act, Title XIX of the Social Security Act (Medicaid Act), IDEA, and the Fourteenth Amendment. When feasible, and with help from the district court's order of dismissal from which neither party appealed, we have paired the alleged violations under each claim with the recited facts of the individual children in an effort to review the district court's failure to find commonality. [7]

Our work reveals no common allegation of a Medicaid Act violation for all

---

[6] Plaintiffs informed the district court that they intended for the court to integrate the first stipulation, filed on May 19, 1995, into the complaint. See Appellees' Supp. App. at 13. We have treated the stipulation as supplementing the facts in the complaint. We did not, however, rely on the updated status of the children in the second stipulation, entered by court order in May 1996, when that status would have the effect of mooting a claim from the complaint. See Reed v. Heckler, 756 F.2d 779, 786 (10th Cir. 1985) (holding purposeful action of defendants in giving plaintiffs what they seek may not make moot plaintiff's claim in a class action).

[7] We recognize that, when deciding a motion for class certification, the district court should accept the allegations contained in the complaint as true. See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982); Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978); Newberg & Conte, supra, at § 7.26. However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." Newberg & Conte, supra, at § 7.26 (citing cases).

- 21 -

named plaintiffs. Similarly, only a few of the named plaintiffs asserted claims under the IDEA and the Fourteenth Amendment. As for the ADA and Rehabilitation Act claims, all named plaintiffs appear to have asserted that defendants denied them benefits, services, or adequate care because of their disabilities. Even if this were sufficient to establish a common legal question as to the named plaintiffs, plaintiffs have not shown that it is common to all putative class members under their proposed class definition. Plaintiffs sought to certify a class of *all* children in state custody who "have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support." Appellants' App., Vol. 2, at 226. This broad definition would include not just children whom New Mexico improperly denied assistance, but also children who actually receive all services required under the ADA and Rehabilitation Act. Children receiving appropriate services have no claim under these statutes. Thus, the district court correctly stated that "there is no one statutory or constitutional claim common to all named Plaintiffs and putative class members." K.L., 167 F.R.D. at 691.

In sum, given the divergent circumstances, legal claims, and corresponding remedy for each child, we hold that the district court did not abuse its discretion in failing to find a single issue of law or fact common to all class members. Because we find no abuse of discretion regarding commonality, we need not reach

the district court's finding on typicality.

Our affirmance of the denial of class certification requires us to rule on the continuing viability of plaintiffs' individual claims. As noted previously, K.L., M.H., R.W., and A.S. are not parties to this appeal. Moreover, we grant defendants' motions to dismiss J.B., Y.A., D.A., E.A., F.A., V.C., C.C., R.E., and J.E. because they have reached the age of majority or otherwise fallen outside of state custody and their claims are now moot. It appears that only C.E., E.E., and J.S. continue to have viable individual claims. Thus, we must determine whether the district court erred in granting New Mexico's motion for abstention as to these parties.

## V. Abstention

The district court, upon reconsideration, abstained from deciding Plaintiff's claims based on Younger v. Harris, 401 U.S. 37 (1971), and Moore v. Sims, 442 U.S. 415 (1979). We review the appropriateness of Younger abstention de novo. See Taylor v. Jaquez, 126 F.3d 1294, 1296 (10th Cir. 1997); Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989).

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction granted them, see Deakins v. Monaghan, 484 U.S. 193, 203 (1988) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)); Seneca-Cayuga Tribe, 874 F.2d at 711, they must on rare occasions

abstain from exercising their jurisdiction in order to "avoid undue interference with states' conduct of their own affairs," Seneca-Cayuga Tribe, 874 F.2d at 711. In Younger, the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury. See 401 U.S. at 43-45. This decision rested on "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Later cases have expanded Younger abstention principles to civil proceedings in which important state interests are involved, see, e.g., Moore v. Simms, 442 U.S. 415, 423 (1979), and to administrative proceedings that are judicial in nature and involve important state interests, see Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627 (1986); Middlesex County, 457 U.S. at 432.

The Younger doctrine, as developed, requires abstention when federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims. See, e.g., Middlesex County, 457 U.S. at 432; Taylor, 126 F.3d at 1297; Seneca-Cayuga Tribe, 874 F.2d at 711. A case warrants Younger abstention only if each of these three criteria are satisfied. However,

"Younger abstention is not discretionary once the above conditions are met absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims." Seneca-Cayuga Tribe, 874 F.2d at 711 (internal citations omitted).

In this case, neither party disputes that the state has an important interest in the care, disposition, and welfare of disabled children in its custody. Instead, the parties' dispute revolves around whether there is an ongoing state judicial proceeding in which the plaintiffs had an adequate opportunity to raise their federal claims.

Plaintiffs acknowledge that C.E., E.E., and J.S., as children in the custody of the state, are or were subject to dispositional and biannual review hearings before the New Mexico Children's Court. These proceedings, while admittedly less than full adversarial hearings, are judicial in nature. Moreover, they exist as long as the child remains in state custody, so they are ongoing. We hold that the continuing jurisdiction of the Children's Court to modify a child's disposition, see N.M. Stat. Ann. § 32A-4-24 (Michie 1978 & Supp. 1998), coupled with the mandatory six-month periodic review hearings, see id. § 32A-4-25, constitutes an ongoing state judicial proceeding. See Nelson v. Murphy, 44 F.3d 497, 501-02 (7th Cir. 1995) (finding continuing criminal court supervision of persons found not guilty by reason of insanity, which includes mandatory review of treatment

- 25 -

plan every sixty days, is an ongoing proceeding for <u>Younger</u> analysis).

Moreover, plaintiffs' federal action would interfere with this proceeding by fundamentally changing the dispositions and oversight of the children. The federal court would, in effect, assume an oversight role over the entire state program for children with disabilities. This places the federal court in the role of making dispositional decisions such as whether to return the child to his parents in conjunction with state assistance or whether to modify a treatment plan. These are the kind of decisions currently made by the New Mexico Children's Court through the periodic review process. <u>See, e.g.</u>, N.M. Stat. Ann. §§ 32A-4-25(H)(2), (6) (Michie Supp. 1998). The current suit would prevent the Children's Court from carrying out this function. <u>But see</u> <u>Marisol A. v. Giuliani</u>, 929 F. Supp. 662, 689 (S.D.N.Y. 1996) (finding class action seeking systematic reform of child welfare program would not "improperly challeng[e] a state court proceeding through the federal courts"); <u>Norman v. Johnson</u>, 739 F. Supp. 1182, 1189-90 (N.D. Ill. 1990) (finding class action challenging child welfare system did not interfere with ongoing proceeding).

While we find plaintiffs were engaged in an ongoing state proceeding, we are less certain about whether they could have adequately raised their federal statutory and constitutional claims in these state proceedings. This uncertainty, however, militates in favor of abstention. Even though plaintiffs have not raised

their federal claims below, the "pertinent issue is whether appellees' [federal] claims *could have been raised* in the pending state proceedings." Moore, 442 U.S. at 425 (emphasis added). Plaintiffs bear the burden of proving that state procedural law barred presentation of their claims in the New Mexico Children's Court. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14-15 (1987); Moore, 442 U.S. at 432. "Certainly, abstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims." Moore, 442 U.S. at 425-26. In this case, plaintiffs have failed to clearly show that they could not have raised their claims during the periodic review proceedings.

Plaintiffs argue that the "New Mexico Children's Court is a court of limited jurisdiction which can hear only matters arising under the Children's Code." Appellants' Br. at 43. However, even assuming that the Children's Court "is only permitted to do what is specifically authorized by the statute," In re Angela R., 729 P.2d 1387, 1391 (N.M. Ct. App. 1986); accord State v. Adam M., 953 P.2d 40, 45 (N.M. Ct. App. 1997), plaintiffs fail to clearly show that the Children's Court could not have adjudicated these federal claims during the periodic review process. The New Mexico Children's Code specifically provides for the periodic review of dispositional judgments in the Children's Court. See N.M. Stat. Ann. § 32A-4-25. Under this provision, the court may "make . . . orders regarding the treatment plan or placement of the child to protect the child's best interests if the

court determines the department has failed in implementing any material provision of the treatment plan or abused its discretion in the placement or proposed placement of the child." Id. § 32A-4-25(H)(6). Thus, the Children's Code seemingly grants the Children's Court wide power to determine the needs and claims of children during the periodic review proceeding. [8]

Furthermore, the Children's Court constitutes a division of the state district court, with a designated district judge presiding. See id. § 32A-1-5(A). Defendants argue that the Children's Court has the full constitutional powers of the district court, a court of general jurisdiction. If this is the case, the Children's Court may hear plaintiffs' claims. The answer to this question is uncertain, but, as the Supreme Court stated in Pennzoil :

> We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims. Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

481 U.S. at 15 (internal citations omitted).

We find no "unambiguous authority to the contrary" that informs us the New Mexico Children's Court lacks the jurisdiction or ability to adjudicate

---

[8]In addition, the Children's Court can modify dispositional judgments at any time on motion of a party or the child's guardian ad litem. See id. § 32A-4-24.

federal statutory and constitutional claims during authorized periodic review proceedings. In this sense, the case before us differs from other cases in which federal courts have refused to abstain. For example, in LaShawn A. v. Kelly, 990 F.2d 1319 (D.C. Cir. 1993), the court based its decision not to abstain in a child welfare class action on the fact that the District of Columbia Family Division "has explicitly rejected the use of review hearings to adjudge claims requesting broad-based injunctive relief based on federal law." Id. at 1323. Similarly, in Baby Neal v. Casey, 821 F. Supp. 320, 332 (E.D. Pa. 1993), rev'd on other grounds, 43 F.3d 48 (3d Cir. 1994), the district court denied abstention in a child welfare case against state officials because state law did not give the Philadelphia Family Court jurisdiction to hear cases against the Commonwealth. See id. at 332. We hold, therefore, that plaintiffs failed to prove that they could not have brought this action during the periodic review proceedings for these children. Thus, the third and final prong of the Younger inquiry is met. Accordingly, we affirm the district court's decision to abstain from hearing the individual claims in this case. [9]

---

[9]The dissent asserts: "[T]he majority in essence assumes Younger precludes the coexistence of federal and state suits involving abused or neglected children in the custody of the State of New Mexico. This sweepingly broad rule would bar any abused or neglected child in State custody from obtaining federal court access to vindicate violations of federal constitutional and statutory rights." Infra, at 5. We make no such assumption or ruling. We merely hold that on this record, plaintiffs have failed to demonstrate that the Children's Court cannot hear their federal statutory and constitutional claims. We do not preclude federal courts from hearing cases such as these if the Children's Court, when presented with the

## V. Conclusion

The Eleventh Amendment does not bar our review of this case. We AFFIRM the district court's denial of class certification and GRANT the defendants' motion to dismiss J.B., Y.A., D.A., E.A., F.A., V.C., C.C., R.E., and J.E. We also AFFIRM the district court's order abstaining from hearing the individual claims of C.E., E.E., and J.S. Finally, we DENY defendants' motion to strike portions of the appendix and appellants' brief-in-chief and GRANT, in part, their motion to revise the caption. **AFFIRMED.**

---

controversy, states that it cannot or will not adjudicate the claims. If that occurs, we would face the situation confronted by our sister circuit in LaShawn A. , 990 F.2d at 1323.

No. 96-2278,  J.B. v. Valdez

**BRISCOE** , Circuit Judge, concurring and dissenting:

I concur in part and dissent in part.  I agree with the majority that plaintiffs' suit is not barred by the Eleventh Amendment.  I disagree, however, with the majority's conclusions regarding  Younger abstention and class certification. I would conclude that  Younger abstention is not warranted because plaintiffs do not ask the federal courts to interfere in the periodic reviews in New Mexico Children's Court, because the periodic reviews do not constitute "ongoing proceedings" sufficient to require abstention, and because the periodic reviews in any event do not afford plaintiffs an adequate forum and opportunity in which to raise their federal claims.  Similarly, I would conclude the district court abused its discretion in denying class certification by applying an incorrect legal standard and misstating the nature of plaintiffs' alleged class claim.

## I. **Younger abstention**

I begin with the premise that abstention under  Younger is appropriate only if the relief sought by plaintiffs in a federal action will require a federal court to interfere with or enjoin a state proceeding that is judicial in nature.  Younger abstention remains the exception rather than the rule, and should be invoked rarely and only in extraordinary circumstances.  See Ankenbrandt v. Richards , 504 U.S. 689, 705 (1992).  If interference in a state action is sought by plaintiffs, or if not sought will nonetheless occur,  Younger abstention is appropriate if: (1)

the state judicial proceeding is ongoing; (2) an important state interest is at stake; and (3) there is an adequate opportunity in the state proceeding to raise federal claims. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Seneca-Cayuga Tribe of Oklahoma v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989).

The majority finds that plaintiffs' federal actions would interfere with purportedly ongoing state judicial proceedings in New Mexico Children's Court by "fundamentally changing the disposition and oversight of the children." The New Mexico Children's Court has jurisdiction over proceedings brought under the New Mexico Children's Code where an individual is eighteen years of age or younger and is alleged to be, among other things, delinquent, neglected, abused, or subject to placement for a developmental disability or a mental disorder. See N.M. Stat. Ann. § 32A-1-8(A). Pursuant to its jurisdiction, the Children's Court, after finding a child has been abused or neglected, may direct that the child remain with his or her parent, place the child under the State's protective supervision, or transfer legal custody of the child to a noncustodial parent, an appropriate state agency, or a child-placement agency. See id. § 32A-4-22(B). Dispositions of the Children's Court are reviewed every six months. See id. § 32A-4-25(A). These dispositional periodic reviews are the "ongoing and pending state court proceedings" claimed by the majority to justify abstention.

I cannot discern how the relief sought by plaintiffs in their federal action will alter a Children's Court disposition that a specific child is neglected or abused or should be taken into state custody, the bases on which the Children's Court makes such determinations, or the manner in which New Mexico oversees children in its care. It is disingenuous to suggest, as the majority does, that plaintiffs seek to "place[] the federal court in the role of making dispositional decisions such as whether to return the child to his parent in conjunction with state assistance or whether to modify a treatment plan." Throughout this litigation, plaintiffs have emphasized nothing more clearly than their intent *not* to interfere with child placement or the specifics of an individual child's treatment plan. Plaintiffs' solitary goal is to obtain injunctive relief requiring defendants to make *available* for inclusion in *any* child's treatment plan benefits to which plaintiffs claim a constitutional and statutory entitlement. Younger abstention is not warranted merely because New Mexico's service delivery system will be affected if a federal court grants plaintiffs their requested relief. See New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 373 (1989).

The very posture of this case is inconsistent with Younger abstention. As noted, interference is the touchstone of Younger: "[A]bstention under Younger presumes that the federal action would interfere with the ongoing state proceedings since, typically, the federal plaintiff's object in filing the federal

- 3 -

action is either to seek an injunction against the state proceedings themselves or to challenge the law being applied in those proceedings." Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1200-01 (3d Cir. 1992). Every Supreme Court abstention decision we have found reinforces this general premise and involves a request to enjoin or directly interfere with some state judicial action. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987) (federal plaintiff sought to enjoin enforcement of state court judgment); Ohio Civil Rights Comm'n v. Dayton Christian Schools, 477 U.S. 619 (1986) (federal plaintiff sought to enjoin pending administrative proceeding); Middlesex, 457 U.S. 423 (plaintiff sought to enjoin disciplinary rules instead of filing answer in state court to ethics charges); Trainor v. Hernandez, 431 U.S. 434 (1977) (federal plaintiff sought to enjoin enforcement of state writ of attachment); Juidice v. Vail, 430 U.S. 327 (1977) (federal plaintiffs sought to enjoin state contempt proceeding).

This case arises in an altogether different context. Plaintiffs do not seek to enjoin any proceeding in the Children's Court, annul a prior Children's Court decision, or prevent the Children's Court from making future determinations. Cf. Wooley v. Maynard, 430 U.S. 705, 711 (1977) (abstention inappropriate where federal suit not "designed to annul the results of a state trial"); Citizens for a Better Env't v. Union Oil Co., 83 F.3d 1111, 1119 (9th Cir. 1996) (Younger "doctrine is simply not relevant where the federal action is not seeking a ruling on

- 4 -

the validity of the state action."). Absent a threat of disruption to New Mexico's judicial process, the comity and federalism concerns that underlay Younger are not implicated. Cf. Marks v. Stinson, 19 F.3d 873, 884 (3d Cir. 1994) ("This is not a case in which the federal plaintiffs are seeking relief which will in any way impair the ability of the state courts . . . to adjudicate anything that is currently before them."); Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 30 (6th Cir. 1984) ("In the typical Younger case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. . . . [P]laintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts. Accordingly, there is no basis for Younger abstention in this case.")

As did the district court, the majority in essence assumes Younger precludes the coexistence of federal and state suits involving abused or neglected children in the custody of the State of New Mexico. This sweepingly broad rule would bar any abused or neglected child in State custody from obtaining federal court access to vindicate violations of federal constitutional and statutory rights. For any such child, a Children's Court proceeding would *always* be pending or ongoing. The appropriateness of abstention, however, turns neither on the mere availability of a state judicial forum nor on the existence of parallel federal and state court proceedings. See, e.g., Pennzoil, 481 U.S. at 14 n.12 ("Our opinion

- 5 -

does not hold that Younger abstention is always appropriate whenever a civil proceeding is pending in a state court."). As noted, Younger abstention springs from notions of comity, federalism, and respect for state sovereignty, and turns on whether a federal court is called upon to interfere in a state judicial process. The healthiest respect for this rule does not dictate abstention here. Numerous federal courts have exercised jurisdiction over similarly broad child welfare cases, many of them expressly finding Younger abstention inappropriate notwithstanding the presence of periodic reviews in state family courts. See, e.g., LaShawn A. v. Kelly, 990 F.2d 1319 (D.C. Cir. 1993); Marisol A. v. Giuliani, 929 F. Supp. 662 (S.D.N.Y. 1996), aff'd on other grounds, 126 F.3d 372 (2d Cir. 1997); Baby Neal v. Casey, 821 F. Supp. 320 (E.D. Pa. 1993), rev'd on other grounds, 43 F.3d 48 (3d Cir. 1994); Norman v. Johnson, 739 F. Supp. 1182 (N.D. Ill. 1990); Wilder v. Bernstein, 645 F. Supp. 1292 (S.D.N.Y. 1986).

Even assuming there is a legitimate basis for invoking the Younger abstention doctrine, I am unpersuaded that its application is appropriate in these circumstances. The periodic reviews, which occur every six months, and which are extremely limited in scope, are not "ongoing proceedings" for purposes of Younger abstention. An "ongoing proceeding" implies a proceeding that is continuing and actively in process. Further, and more important, the Children's Court is not an adequate forum in which plaintiffs' federal claims could either be

raised or fully and fairly adjudicated. New Mexico courts have expressly reiterated that the Children's Court "is only permitted to do what is specifically authorized by the statute." In re Angela R., 729 P.2d 1387, 1391 (N.M. App. 1986); see State v. Adam M., 953 P.2d 40, 45 (N.M. App. 1997). The applicable statute, i.e., the Children's Code, provides the Children's Court with jurisdiction to consider only proceedings that arise under the Children's Code. See N.M. Stat. Ann. § 32A-1-8(A). As relevant here, the Children's Code explicitly authorizes the Children's Court to make initial determinations of a child's status, conduct periodic dispositional reviews of the child's placement and treatment plan, and alter the treatment plan. See id. § 32A-4-25. There is no language in the Children's Code that reasonably may be construed as permitting any child in state custody to initiate a federal statutory or constitutional claim in Children's Court, nor is there any statutory language suggesting jurisdiction of the Children's Court extends to officials in any state agencies other than the Department of Children, Youth, and Families. Given the lack of such specific statutory authorization, I would conclude plaintiffs have clearly shown their claims were not cognizable in Children's Court.

In LaShawn A., 990 F.2d 1319, the D.C. Circuit considered an analogous issue. There, a class action on behalf of foster care children was brought challenging the practices of the District's Department of Human Services. In

LaShawn A., the children were subject to periodic review proceedings every six months, or, in certain circumstances, every year. In affirming the district court's order finding abstention unwarranted, the court characterized the periodic review proceedings as "an inadequate or inappropriate forum for pursuing these claims." Id. at 1322. The court was particularly concerned with the limited scope of the hearings, which were intended to periodically reassess the disposition of the child, not resolve a "challenge to the District of Columbia's administration of its entire foster-care system." Id. at 1323.

These same deficiencies are present here. The purpose of the periodic dispositional reviews is not to determine a state official's compliance with federal laws mandating the provision of specific services, or the constitutional adequacy of New Mexico's entire service delivery system, but rather to reassess the Children's Court's previous determinations regarding custody and treatment. See N.M. Stat. Ann. § 32A-4-25(G); In re Jacinta M., 764 P.2d 1327, 1328 (N.M. App. 1988) ("The periodic review is a proceeding to determine whether a change in an initial disposition is warranted by a change in circumstances."). These determinations are intensely individual, focusing only on the child and his or her family or guardian. The nature of the proceedings does not permit a prolonged, critical, and adversarial examination of the gamut of services being provided to a child in state custody. Moreover, many procedural safeguards that are present in

a typical adversarial proceeding, and that are designed to ensure fundamental fairness and the reliability of admitted evidence, are noticeably absent in Children's Court hearings. For example, the court itself is not required to conduct the review hearing, but may designate that task to a special master, who in turn submits recommendations to the court. See N.M. Stat. Ann. § 32A-4-25(A). And, although evidence may be presented and witnesses cross-examined at the hearing, discovery is limited and the rules of evidence do not apply.[1] See id. § 32A-4-25(C) & (D). The Children's Court is not suited to adjudicate the complex constitutional, statutory, and systemic claims raised by plaintiffs. See Wooley, 430 U.S. at 710 (" Younger principles aside, a litigant is entitled to resort to a federal forum in seeking redress . . . for an alleged deprivation of federal rights.").

In summary, I believe the district court erroneously invoked Younger. Plaintiffs do not seek to enjoin an ongoing state court proceeding or annul a previously determined state court judgment or order. In addition, the dispositional review hearings in the New Mexico Children's Court do not

---

[1] Plaintiffs have taken the unusual step of obtaining two affidavits from Children's Court judges who attest the Court historically has not handled cases involving the federal rights of children. The judges also claim clogged dockets, limited discovery, and the summary nature of the proceedings render the court a poor forum in which to adjudicate matters of such magnitude. Aplt.'s App. at 762-65.

- 9 -

constitute ongoing proceedings and do not present plaintiffs an adequate forum in which to air their federal statutory and constitutional grievances.

## II. Class certification

The denial of class certification is a more difficult question given that our scope of review is limited to whether the district court abused its discretion. However, I conclude plaintiffs have satisfied that burden here. An abuse of discretion is established where, as here, the district court errs in its legal interpretation of plaintiffs' class claim and misapplies the Rule 23 factors used to determine if class certification is appropriate. See Boughton v. Cotter Corp., 65 F.3d 823, 826-27 (10th Cir. 1995) (abuse of discretion standard employed only if district court applied correct criteria to facts of case).

Before addressing the merits of the district court's class certification order and the majority's resolution of the class certification issues, it is necessary to elaborate on the nature of the class claim brought by plaintiffs. Plaintiffs do not seek redress for any individual state decisionmaker's determination that services need not be provided to a specific child. Indeed, the specific services that are or are not being provided to a particular child apparently are not at issue in this lawsuit. Plaintiffs' complaint instead is systemic: They contend the entire gamut of support programs and services for children in state custody is deficient.

The central theory in the complaint is that, when children with mental and behavioral disabilities are brought into state custody, defendants have failed to develop a system which has the capacity to meet the special needs these children have because of their disabilities. Plaintiffs allege that these systemic failures constitute violations of various federal laws, and result in discrimination against them because of their disabilities.

Aplt.'s Br. at 29. Plaintiffs do not seek money damages, but only declaratory and injunctive relief requiring defendants to provide a sufficient "care and program delivery system." In essence, plaintiffs seek an injunction requiring defendants to put into place policies and plans to ensure that children matriculating into state custody receive the screening and other services to which they are entitled under federal law. Bearing in mind the nature of plaintiffs' class claim, I turn to the merits of the district court's decision denying certification.

I am not convinced that the district court applied the appropriate legal standard in concluding the commonality and typicality prongs of Rule 23(a) were not satisfied. The district court stated as follows in its order:

> In the present matter, the sixteen named Plaintiffs have stated claims under the Rehabilitation Act, the ADA, the Medicaid Act, and the IDEA. They also assert violations of their substantive due process rights to minimally adequate treatment, family integrity, and access to judicial process. Some named Plaintiffs and putative class members have allegedly suffered violations of only one of the statutory and constitutional rights listed above. Other named Plaintiffs and putative class members have allegedly suffered violations of two or three of the statutory or constitutional rights listed above. However, to the Court's knowledge, no named Plaintiff and no putative class member has allegedly suffered violations of all or even most of the statutory and constitutional rights listed supra.

- 11 -

The Court must therefore conclude that there is no one statutory or constitutional claim common to all named Plaintiffs and all putative class members. Rather, each statutory and constitutional claim is common to an imprecisely defined subset of some named Plaintiffs and some putative class members. Thus, there can be no one legal theory or factual issue common to all Plaintiffs and all putative class members. Nor can the claims of the class representatives and the class members be based on the same legal or remedial theory. . . .

. . . .

. . . [T]he Court finds that the members of the proposed class do not satisfy the prerequisite of commonality because they are insufficiently subject to the risk that they may suffer from all of Defendants' alleged violations.

K.L. v. Valdez, 167 F.R.D. 688, 691-93 (D. N.M. 1996) (citations omitted).

The insinuation in the district court's statement–that all class members must suffer or be at risk of suffering from all (or even more than one) of defendants' alleged violations–is not only contrary to well-settled law but inconsistent with the court's earlier recognition that one issue of common fact or law is sufficient for commonality purposes. Pursuant to the rule applied by the district court, no action could proceed as a class unless each named plaintiff uniformly asserted the same legal claims or suffered the same injuries at the same time. The district court's analysis is more akin to one applied to a Rule 23(b)(3) class action than a Rule 23(b)(2) class action. The differences are significant. Rule 23(b)(3) is a broad catch-all provision allowing the district court to certify a class in its discretion when to do so would conserve the resources of the judiciary and the parties by resolving the dispute via a class action rather than numerous

individual suits. Class certification under Rule 23(b)(3) is appropriate only if the "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members." (Emphasis added). This predomination requirement makes sense in a Rule 23(b)(3) context because these cases generally involve highly individualized claims or require an individualized plaintiff-by-plaintiff determination of monetary damages. See 7A Charles A. Wright, et al., Federal Practice and Procedure, § 1777, at 516-17 (1986). The nature of a Rule 23(b)(2) action obviates the need for common issues to predominate because injunctive relief is sought that, if granted, will cure the ills suffered by every named plaintiff and class member. Few, if any, individualized determinations need be made in a Rule 23(b)(2) class action. See id. § 1763, at 201 ("Class suits for injunctive or declaratory relief by their very nature often present common questions satisfying" commonality.).

The district court compounded its error by disregarding the complaint and relying on a stipulation that it directed the parties to craft. The court required the parties to "stipulate to as many facts as possible" as to "the present custodial status of each named Plaintiff and the services currently being provided to those Plaintiffs." Aplt.'s App. at 114. The parties presented a stipulation to the court which set forth each service each named plaintiff was receiving. In denying class certification, the district court essentially ignored the allegations of the complaint

and, based on this stipulation, determined exactly what services it appeared each named plaintiff was allegedly being deprived of in violation of federal law. This was, first and foremost, an independent determination of the merits of plaintiffs' claims. It is well-settled that the district court may not examine the merits in deciding a motion for class certification. See Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982). Even more unsettling is that the stipulation is useless in determining whether common issues exist, or whether the claims of the named plaintiffs are typical of the claims of the absentee class members. The district court's misuse of this stipulation renders its entire certification analysis suspect. The stipulation does not reveal, as does the complaint, that plaintiffs were seeking systemic relief and not just asserting individual violations of federal statutes.

Applying the appropriate legal standards to the facts alleged in the complaint, I would conclude the commonality and typicality requirements are satisfied and a class should have been certified. As previously stated, plaintiffs do not seek redress for individual deprivations, but seek systemic relief that, if obtained, will remedy every violation suffered by any child in state custody. Hence, the dominant common legal theme asserted by every plaintiff is that the systemic deficiencies in the defendant's treatment service system deprive all children in state custody who suffer from mental and developmental disorders of

rights guaranteed them by statute or the Constitution. This satisfies Rule 23(a)(2)'s commonality requirement. See Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) ("Because the requirement may be satisfied by a single common issue, it is easily met.") (citing H. Newberg & A. Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992)).

Typicality is also present. Rule 23(a)(3) precludes certification unless "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality does not require that the claims of class members be identical to the claims of the class plaintiffs. See Anderson, 690 F.2d at 800. "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988).

In concluding plaintiffs failed to show typicality, the district court stated "there are potential conflicts of interest between the named Plaintiffs and the putative class." 167 F.R.D. at 692. The district court saw potential conflicts in that some named plaintiffs were pursuing statutory claims that were not being pursued by other named plaintiffs. Thus, according to the district court, if one plaintiff was pursuing only an IDEA claim and another was pursuing only a Medicaid Act claim, each would be tempted to ignore the statutory claim of the

other in vigorous pursuit of their own claim.

The potential conflict perceived by the district court is minimal, if it exists at all. As noted, the district court did not accurately characterize the nature of plaintiffs' complaint. The court reads the complaint as asserting causes of actions under particular federal statutes alleging a particular child has been deprived of a particular service or treatment to which the child is entitled under federal law. The court ignores that the crux of the complaint is the claim alleging the very process that occurs in the course of a child's matriculation into state custody is discriminatory and unconstitutional. Plaintiffs seek comprehensive, not individual, relief.

When viewed in this light, the named plaintiffs have an incentive to show every facet of treatment or services provided by defendants is inadequate and is a byproduct of a system-wide deficiency. Emphasis by a named plaintiff on a claim alleged by that plaintiff but not by another named plaintiff or class member would be inconsistent with this incentive and would serve only to demonstrate a failure to provide a particular federally-mandated service or type of treatment, not a systemic inadequacy. This would undermine *every* plaintiff's claims that there are systemic deficiencies in the process employed by defendants to determine what services are needed, are required by federal law, and are to be provided to a child upon entry into state custody. See Baby Neal , 43 F.3d at 58 (noting "a

- 16 -

typicality requirement is almost automatically satisfied in actions primarily

seeking injunctive relief").

Finally, I find troubling the majority's unexplained rejection of two cases

from our sister circuits that have dealt with this precise issue. Both Marisol A. v.

Giuliani, 126 F.3d 372 (2d Cir 1997) and Baby Neal, 43 F.3d 48, were systemic

child welfare cases in which class certification was sought. In Marisol A., the

Second Circuit permitted a class to be certified; in Baby Neal, the Third Circuit

required a class to be certified.

In Marisol A., a class action was brought on behalf of New York City

children alleging the New York City child welfare system was systemically

deficient in failing to provide adequate services in violation of a number of

federal and state laws and the United States Constitution. With some

reservations, a panel of the Second Circuit upheld the district court's decision to

certify a class. Defendants, not surprisingly, contended commonality was present

only at the "grossest level of generality," and typicality was entirely nonexistent:

> The defendants point out that each named plaintiff challenges a
> different aspect of the child welfare system. These include
> allegations of inadequate training and supervision of foster parents,
> the failure to properly investigate reports of suspected neglect and
> abuse, unconscionable delay in removing children from abusive
> homes, and the inability to secure appropriate placements for
> adoption . . . . The claimed deficiencies implicate different statutory,
> constitutional, and regulatory schemes. Further, the defendants note
> that no single plaintiff (named or otherwise) is affected by each and
> every legal violation alleged in the complaint, and that no single

- 17 -

specific legal claim identified by the plaintiffs affects every member of the class.

126 F.3d at 376-77. The district court had rejected these arguments by characterizing the common questions of law as "whether defendants systematically have failed to provide . . . legally mandated services." Id. at 377. "The unique circumstances of each child do not compromise the common question of whether . . . defendants have injured all class members by failing to meet their federal and state law obligations." Id. On appeal, the court held that "conceptualizing the common legal and factual questions at this high level of abstraction"--by aggregating them into a "super-claim"–did not constitute an abuse of discretion. Id. The court conceded this generalized characterization "stretche[d] the notions of commonality and typicality," but found it convincing that plaintiffs' injuries allegedly derived from a single deficient system's unitary course of conduct. Id.

One apparently significant factor in the Second Circuit's decision in Marisol A. was the Third Circuit's decision in Baby Neal. In Baby Neal, a class action was brought on behalf of children in the custody of the Philadelphia Department of Human Services, which operated the City's child welfare system. The complaint alleged systemic claims very similar to those in Marisol A. and those here. Unlike in Marisol A., the district court in Baby Neal denied class certification on grounds that plaintiffs had failed to show commonality and

- 18 -

typicality. The district court's order in the instant case is essentially a verbatim copy of the district court's order in Baby Neal. For example, the district court in Baby Neal found commonality was not satisfied because not "one of the common legal issues asserted by plaintiffs applies to every member of the proposed class . . . . The children's claims are based upon different legal theories depending on the individual circumstances of that child . . . . The services required to meet the needs of one child are vastly different from that of another child." 43 F.3d at 60. Similarly, the district court found no typicality because "the plaintiffs were not challenging precisely the same conditions and practices because the services required by law differ depending on a child's individual situation." Id. at 63.

The Third Circuit in reviewing this ruling held denial of certification was an abuse of discretion. In rejecting the district court's finding of no commonality, the court characterized plaintiffs' complaint as "challenging common conditions and practices under a unitary regime." Id. at 60. The district court had overly fragmented the claims, emphasizing factual and legal individual differences that were "largely irrelevant" in light of the nature of injunctive relief sought. Id. Significantly, the district court in Baby Neal failed to recognize that remedying the systemic deficiencies would of necessity cure each plaintiffs' alleged injuries regardless of what services were being deprived that plaintiff. It was therefore a sufficiently common legal basis for class certification purposes that plaintiffs

- 19 -

attacked the "systemic deficiencies in providing legally mandated child care services." Id. at 61. In short, the "violations exist[ed] independently of individual children's circumstances." Id. at 62. The Third Circuit found the district court's typicality findings equally unpersuasive. The systemic deficiencies, not individual differences, were central to the claims of the named plaintiffs and class members. There was "no danger . . . that the named plaintiffs have unique interests that might motivate them to litigate against or settle with the defendants in a way that prejudices the absentees." Id. at 63.

The facts of this case are as compelling as those in Baby Neal. The district court here denied class certification by citing factual differences that are largely irrelevant to the class issue and misconstruing the unitary systemic claim on which plaintiffs' proposed class rests. If the requirements of Rule 23(a) are met and one of the requirements of Rule 23(b) is met, then the district court lacked discretion not to certify a class. When this case is analyzed under the appropriate legal framework, plaintiffs' claims satisfy the Rule 23 requirements. I would reverse the district court's denial of class certification and remand the case to the district court.

### III. Conclusion

I concur in the majority's conclusion that plaintiffs are not barred by the

Eleventh Amendment from proceeding in federal court.  I dissent from the majority's conclusions both that     Younger  abstention is warranted under the facts of this case and that the district court did not abuse its discretion in denying class certification.